Fort Hill Stone Co. v. Orm's Adm'r.

CASE 25—PETITION ORDINARY—MAY 29.

# Fort Hill Stone Co. v. Orm's Adm'r.

### APPEAL FROM HARDIN CIRCUIT COURT.

MASTER AND SERVANT—RESPONDEAT SUPERIOR.—When one enters into the service of another he assumes to run all the ordinary risks pertaining to such service; and when a number of persons contract to perform service for another, the employes not being superior or subordinate the one to another in its performance, and one is injured through the negligence of another, they are regarded as the agents of each other, and no recovery can be had against the employer.

Appellant was the owner of a stone quarry on the side of a hill, at the foot of which was machinery for crushing the stone. The stone was moved by trucks to a turn-table on the side of the hill, from which it was carried by an inclined railway to the hopper at the foot of the hill. Several men were employed at the turn-table to shove the loaded cars to the top of the incline, the special duty of one man being to attach to the loaded car a cable, for which he

received extra pay. Two other men were employed at the foot of the hill to unload the cars and superintend the crushing of the stone. Through the negligence of some one at the turn-table, a car was shoved down the incline without the cable being attached, and one of the men at the foot of the hill was killed. In this action by his personal representative, alleging that his death was caused by the willful neglect of appellant, *Held*—That appellant is not liable.

BUSH & ROBERTSON AND J. P. HOBSON FOR APPELLANT.

1. The master is not liable for an injury to a servant resulting from the neglect of a co-servant, the one servant not being superior or subordinate to the other. The statute which gives a right of action for the loss of life resulting from the willful neglect of another, his "agents or servants," was not intended to change this rule. Any thing to the contrary in the case of L. & N. R. R. Co. v. Brooks' Adm'r, 7 Ky. Law Rep., is a *dictum*, which the court is asked to reconsider. (Cooley on Torts. 541–45; Wood on Master and Servant, section 436; Chicago, Milwaukee and St. Paul R. R. Co. v. Ross (U. S. Sup. Ct.), 20 Cent. Law Journal, 27; Freeman's note to Murray v. S. C. R. R. Co., 36 Am. Dec., 279–90; Doyle v. Swift I. & S. Works, 5 Ky. Law Rep., 59.)

2. To make out a charge of willful neglect there must be recklessness, indifference to the safety of others, or gross misconduct. (L. & N. R. R. Co. v. Howard's Adm'r, 6 Ky. Law Rep., 163; Board of Internal Improvements v. Scearce, 2 Duv., 576; L. & P. Canal Co. v. Murphy, 9 Bush, 531; Jacobs v. L. & N. R. R. Co., 10 Bush, 273; Lexington v. Lewis, *Ibid.*, 679; Claxton v. E., L. & B S. R. R. Co., 13 Bush, 641; L. & N. R. R. Co. v. Filbern, 6 Bush, 580.)

3. The plaintiff's intestate brought about his own injury, and, therefore, the defendant is not liable. (Jones v. L. & N. R. R. Co., 6 Ky. Law Rep., 694; Wright v. Rawson, 35 Am. Rep., 275 (52 Iowa, 329).

4. A new trial should have been granted because of the misconduct of the attorney for the plaintiff in his argument to the jury. (Civil Code, section 340, subsection 2; McClure v. Commonwealth, 5 Ky. Law Rep., 468.)

5. The motion for a judgment notwithstanding the verdict should have been sustained, because the petition alleges that the acts charged were done *willfully*, and does not allege they were done by willful neglect. (Lexington v. Lewis, 10 Bush, 677.)

MONTGOMERY & POSTEN FOR APPELLEE.

1. Where willful neglect is alleged under the statute, the rule which exempts the master from liability for an injury to a servant by the negligence of a co-servant in the same grade of service does not apply.

2. A clear case of willful neglect is made out by the evidence.

Fort Hill Stone Co. v. Orm's Adm'r.

3. This case is unlike the case of Jones v. L. & N. R. R. Co., 6 Ky. Law
Rep., 694.
4. Every thing in the argument of counsel for plaintiff to which there
might have been an objection was in answer to the assertions and
unsupported charges of counsel for defendant; but even if counsel
for plaintiff was guilty of misconduct in his argument, no advantage
can be taken of it, for the reason that no objection was made at the
time.

SAME COUNSEL IN PETITION FOR REHEARING.

1. Appellee's intestate and the party whose negligence caused his death
were not engaged in a common service within the meaning of the
rule announced in the opinion. (L. & N. R. R. Co v. Collins, 2
Duv., 119; L., C. & L. R. R. Co. v. Cavens, 9 Bush, 565; L. & N.
R. R. Co. v. Brooks' Adm'r, 7 Ky. Law Rep., 113.)
2. The rule applies only when the superior has employed skillful ser-
vants. (Saunders on Negligence, page 128; L. & N. R. R. Co. v.
Collins, supra.)
3. The rule does not apply when willful neglect is shown. (L. & N. R.
R. Co. v. Robinson, 4 Bush, 509; L. & N. R. R. Co. v. Brooks'
Adm'r, supra; L, C. & L. R. R. Co. v. Cavens, supra; Cooley on
Torts, edition 1879, pages 263 and 265.)
4. The case was decided on a point not placed in issue by the pleadings,
there being no denial that the parties whose negligence caused the
death were agents and servants of appellant.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellee brought this action to recover for the
destruction of the life of his intestate, by the alleged
willful neglect of appellant's servants or agents, the
intestate himself being one of them.

It appears from the evidence that appellant was
the owner of a stone quarry on the side of a hill,
at the foot of which, about seventy-five yards from
the quarry, was located the machinery for crushing
the stone, which was transported thence by railroad
to market.

Upon the same terrace where the stone was quar-
ried was a track upon which cars or trucks loaded
with stone were moved by hand to a turn-table, and

thence by a track, descending at a grade of forty-five degrees or more, to what was called the hopper-house at the foot of the hill, and over the machinery for crushing the stone.

Two persons were employed in the hopper-house in transferring the stone from the cars to the hopper, and in seeing that the stone did not choke it, the intestate at the time he was killed being one of them.

About twenty feet above the turn-table was a friction pully or drum, on which was a wire rope, one end of which was attached to the empty car at the hopper-house, and the other end intended to be attached to the loaded car before being shoved from the turn-table upon the track leading to the hopper-house, so that the former would be drawn up at the same time the latter would go down, the track being constructed so as to allow them to pass.

The drum was in charge of a single person, who received seventy-five cents per day in excess of that paid the other hands engaged in moving the stone, and it was his duty, when receiving a signal from one of the men in the hopper-house to let down a loaded car, to go forward to the front of the level on which the drum was situated, and if he saw the cable was fastened to the loaded car, and the car was all right to be let down, to give the signal to the men at the turn-table to push the car off.

It appears that it requires four or five men to push the loaded car from the turn-table to the top of the incline, it being the especial duty of one of them to hitch the cable to it, before it descends,

who receives ten cents per day extra pay for that service.

According to the evidence of the man at the drum, they had been at work about one-half hour in the forenoon when he, being at his place at the drum, heard the men at the turn-table say "shove," whereupon he went forward to see what they were doing, and saw they were shoving the car off before the cable was hitched to it; that the front wheels of the car were near to or about gone over the top of the incline, and though he hallooed to them not to let it go, they continued to push, and the result was that it descended with such rapidity and violence as to knock in one side of the hopper-house, and so severely injure the intestate that he died in a short time.

It is clear that the injury to the intestate was the result of the failure of the person whose duty it was to hitch the rope to the loaded car before it was pushed upon the incline. The testimony of that person is, that the other hands shoved the car off the turn-table so rapidly or suddenly that, though he tried to do so, he was unable to hook the rope to it before it went over the top of the incline.

The evidence does not authorize us to attribute negligence to the person in charge of the friction pully, for it appears that the car was started down the incline before he gave the signal, and, perhaps, in spite of his efforts to prevent it. Nor is it a matter of importance in what part of the hopper-house the intestate may have been when the car struck him, for his companion was also injured, and

it would be hardly probable that any one in the hopper-house could escape injury under such circumstances.

The destruction of the life of the intestate being caused by the negligence of the persons whose business it was to shove the loaded car upon the incline, in failing to hook the rope to it, it is not material whether the negligence is to be attributed to the one whose especial duty it was to attach the cable, or to those with him, or to all of them.

It is shown that the machinery and appliances for moving cars upon the incline were in sound working condition, and that the man, by properly using the friction pulley, could control the speed of the descending car, and let it go down to the hopper-house with comparative safety.

The single inquiry then is, whether appellant can be made liable under the statute for the destruction of the intestate's life, by the negligence of those whose duty it was to shove the car from the turntable to the incline and to attach the cable to it.

The rule which has in similar cases heretofore been laid down by this court is, that when one enters into the service of another, he assumes to run all the ordinary risks pertaining to such service. And when a number of persons contract to perform service for another, the employes not being superior or subordinate the one to another in its performance, and one is injured through the negligence of another, they are regarded as the agents of each other, and no recovery can be had against the employer. (Louisville, Cincinnati and Lexington Railroad Company

v. Cavens, 9 Bush, 559; Doyle v. Swift Iron Works, 5 Ky. Law Reporter, 59; L. & N. R. R. Co. v. Collins, 2 Duvall, 114.)

This rule has been so frequently applied in cases like the present by this court, and is so universally sanctioned by courts of other States, and the reasons for it appear to be so in accordance with public policy, that we do not feel authorized to disregard it.

The person or persons to whose negligence the death of the intestate in this case is attributable, had no right or power to control and direct him, nor can they be regarded as having been in any respect his superiors in the discharge of the duties pertaining to the business they were all engaged in, but were equal and co-ordinate, and, therefore, they and the intestate must be considered as the agents of each other.

Applying this rule, appellant can not, according to the evidence before us, be held liable for the destruction of the life of appellee's intestate, not having, in legal contemplation or in fact, been guilty of the negligence that caused it; and as the record stands we think the peremptory instruction to find for the defendant ought to have been given.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.