# DECISIONS

### OF THE

# COURT OF APPEALS OF KENTUCKY.

## JANUARY TERM, 1906.

Case 89.—ACTION BY HAMILTON BLACKBURN AGAINST S. F. DANA & CO. FOR DAMAGES FOR PERSONAL INJURIES RECEIVED IN ITS SERVICE AS SHOVELER OF COAL.— January 9.

## S. F. Dana & Co. v. Blackburn.

Appeal from Campbell Circuit Court.

A. S. BERRY Circuit Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

1. Master and Servant—Injury—Negligence of Fellow Servant— Appellee, who was a shoveler in a coal elevator, was injured by being struck by one of the cars used in carrying the coal. His work was being done in connection with the truckman and engineer, neither of whom was his superior, but was his fellow workman. Held—That while in this State the common law doctrine of respondeat superior applies where a brakeman on a railroad train is injured by gross negligence upon the part of the engineer, we have been referred to no case which extends this doctrine to an injury to a servant caused by the negligence of a stationary engineer employed by the same master and engaged in the same service with the injured servant. The engineer being a fellow servant of appellee, if the latter was injured by his negligence, of which there is no proof, such injury was incidental to the work in which both were engaged and one of the ordinary risks pertaining thereto for which no recovery can be had.

ROBERTSON & BUCHWALTER and THOMAS L. MICHIE for appellant.

### BRIEF ON ARGUMENT.

Appellant complains that:

1st. This action was not properly within the jurisdiction of the trial court, and that the court erred in overruling defendants' (now appellants') demurrer to the reply of plaintiff (now appellee).

S. F. Dana & Co v. Blackburn.

2d. The court erred in giving special instructions to the jury requested by the plaintiff, and in refusing instructions offered by the defendants, to which the defendants then and there excepted and objected.

3d. The court erred in overruling the motion of the defendants, which was made at the close of all the evidence introduced by the plaintiff, that the court give a peremptory instruction to the jury to find a verdict for the defendants, and that the court erred in refusing to direct a verdict for the defendants.

## AUTHORITIES CITED.

1. As to the jurisiction of the trial court. (Adams Express Co. v. Schofield, 23 Ky. Law Rep., 1120; Chesapeake & O. R. R. v. Riddle, 24 Ky. Law Rep., 1687; Cox v. E. Tenn. R. R., 68 Ga., 446; B. & O. Ry. v. Fulton, 59 O. S., 575; Southern Ry. v. Allison, 190 U. S., 326.)

2. As to other points. (Ill. Central R. R. v. Stewart, 23 Ky. Law Rep., 637; Shearman & Redfield on Neg., sec. 109; Fort Hill Stone Co. v. Orm's Adm'r., 84 Ky., 183; L. & N. v. Moore, 83 Ky., 675; Wagner v. Wetmore, 12 Ky. Law Rep., 638; Volz v. C. & O. Ry., 95 Ky., 188; Ills. Central v. Hilliard, 99 Ky., 684; L. & N. v. Edmund's Ex'or, 23 Ky. Law Rep., 1049; Robinson v. L. & N., 15 Ky. Law Rep., 626; McKinney on Follow Servants, pp. 168-173; L. & N. v. Cable, 9 Ky. Law Rep., 439; Potter v. L. & N. R. R., 20 Ky. Law Rep., 1842; Hyer v. Jamesville, 101 Wis., 37, 97 Pa. St., 450; Tyndale v. Old Colony R. R., 156 Mass., 503; Taylor v. Yunkers, 105 N. Y., 202, 91 Ky., 520; Learles v. Manhattan R. R. Co., 101 N. Y., 62.)

GRAY & HALL for appellee.

1. A peremptory instruction should never be given in behalf of the defendant when there is any evidence, however slight, tending to support the plaintiff's cause of action. (Ill. Cent. Railroad Co. v. Colly, 27 Ky. Law Rep., 730.)

2. The rule has been well established by this court, that if a party introduces any, or a scintilla of evidence, supporting his claim, it is error to take the case from the consideration of the jury. (McFarland, Adm'r v. Harbeson & Walker Co., 26 Ky. Law Rep., 746.)

3. A new trial will not be granted because of excessive damages unless the damages are so great as to strike the mind at first blush as having been superinduced by passion or prejudice.

S. F. Dana & Co v. Blackburn.

CASES RELIED ON.

Ill. Central Railroad Co. v. Colly, 27 Ky. Law Rep., 730; McFarland, Adm'r v. Harbeson & Walker Co., 26 Ky. Law Rep., 746; Ky. Central R. R. Co. v. Ackley, 10 Ky. Law Rep., 170; L. & N. R. R. Co. v. Wade, 11 Ky. Law Rep., 904; N. N. & M. V. Co. v. Walker, 14 Ky. Law Rep., 175; C. & O. R. R. Co. v. Jordon, 25 Ky. Law Rep., 574; Fort Hill Stone Co. v. Orm's Adm'r, 8 Ky. Law Rep., 70; Angel v. Jellico Coal Mining Co., 25 Ky. Law Rep., 108; Covington Sawmill & Manufacturing Co. v. Clark, 25 Ky. Law Rep., 694; Mayfield Woolen Mills Co. v. Frazier, By, &c., 25 Ky. Law Rep., 2263; L. & N. R. R. Co. v. Wade, 11 Ky. Law Rep., 904; Mud River Coal Co., &c. v. Tipton, 12 Ky. Law Rep., 940; L. & N. R. R. Co. v. Hofgesang, 13 Ky. Law Rep., 829; Chesapeake & Ohio Ry. Co. v. Friel, 19 Ky. Law Rep., 152.

OPINION BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the Campbell Circuit Court, entered upon the verdict of a jury, whereby appellee recovered of appellant $750 in damages for personal injuries received while engaged in its service as a shoveler of coal. Appellant, a corporation, owns and operates a coal elevator on the Licking river in the city of Newport. The coal it handles is carried to its elevator in barges, which are moored to a float and the float to the bank at the foot of a double-track tramway, which connects the float with an engine house and coal sheds on an elevated point overlooking the river.

The coal is loaded from the barge in cars standing on the float, which are run up one of the tracks of the tramway to the coal sheds above, and when emptied of coal are returned upon the other track of the tramway to the float below. The cars are moved up and down the tramway by means of a wire cable, which passes over a drum operated by a steam engine; the drum and engine being situated in the engine house at the top of the tramway. On the float is a hopper, supported by upright posts. By the use

of a steam digger coal may be dumped into the hop-per, through which it runs into the cars when placed beneath the hopper to receive it. When the steam digger is not in use the coal is thrown by appellant's shovelers from the barge into the cars on the float with shovels, and such was the manner of loading the coal on the cars when appellee received the injuries complained of. The shovelers were paid for their work by appellant according to the number of cars loaded by them, respectively. A shoveler and truck-man were assigned to each car it being the duty of the truckman to aid the shoveler in getting the empty car to the place on the float where it could be loaded by the shoveler from the barge, and the further duty of the two, after it was loaded—the shoveler by pushing and the truckman by pulling it—to move and adjust the car to the track of the tramway; and, when the loaded car was adjusted to the track upon which it ascends to the coal sheds, it was the duty of the shoveler who loaded it to attach it to the wire cable by dropping the ring at the end of the cable over the hook, or "goose neck," on the end of the car, after which the car would by the action of the engine and drum in pulling the cable be drawn to the unloading place above.

Although several employes of appellant were present when appellee was injured, some of whom were introduced as witnesses, none of them saw or could tell how it was done. The only witness on that point was appellee himself, and his testimony is quite confused and indefinite. When questioned by his counsel as to the manner of receiving his injuries, he said: "Well, there was a certain car after dinner, and when I was taking it down to the run, Mr. Elam Grizzell—I think that is his name—which are the river boss,

was taking mud off the track and I hollowed to him to get out, so I could pull the cable wire rope. After he had gotten out, why I taken hold of the hook and swung to put over the goose neck, and as I did why I sort of slipped and throwed my hand up against the car. At that time I looked down the car was going I struggled to get aside of it, and found myself I was being mashed, and that was the last I knowed of." Upon being asked if he did not slip before he was caught by the car, appellee said: "When I was feeling for the cable as I went to hook it, I slipped and got against the car. That is the last I remember of it till I was being mashed." But, taking appellee's testimony as a whole, and giving it a meaning most favorable to him, it was in substance that, after loading a car, he was assisted by the truckman to get it in position for its ascent to the coal shed and had just attached it to the cable, when, without notice to, him, it was started up the tramway. observing which he tried to get out of its way, but in doing so slipped and fell, which occasioned his being caught between the car and a post of the hopper, whereby his body was crushed, several of his ribs broken, and other injuries of a serious nature sustained by him. His testimony fully establishes the facts that it was his duty to attach the cable to the car and that he had so attached it before he was injured. Indeed, the latter fact can not be disputed; for the car could not be moved until it was so attached.

It is appellee's contention that he was injured by the negligence of appellant's engineer, that the latter was his superior in authority, and that the negligence consisted in the moving of the car, by which he was injured, without notice to him and before he could reach a place of safety after attaching the cable

to it.   His own testimony was that he gave no signal to the engineer to start the car, and that as, in attaching the cable to the car and when injured, he was so situated that he could not see the truckman, or be seen by him, he could not tell whether the car was moved by a signal from the truckman or not.   Appellee also testified, in which he was corroborated by one other witness, that the car was sometimes started by the engineer without a signal; for, when looking from the window of the engine room out on the tramway and float, as he often did, he could tell when the cable was attached to the car by its taut condition, and when in such condition he knew the car could be moved. Therefore a signal was unnecessary; but the car was usually started by a signal from the truckman to the engineer. If the engineer was not at the window, or in sight, the signal was given by a halloo from the truckman. In testifying, appellee would not undertake to say, and did not know, whether or not the engineer was at the window of the engine house when he attached the cable to the car, and no other witness testified that he was at the window at that time.   In brief, there was no testimony that tended to prove whether the car was started with or without a signal.   The only testimony as to the moving of the car was that of appellee, and though it be admitted that it was started without notice to him, and before he was ready for it to start, and that some one was guilty of negligence in thus starting it, the identity of the negligent servant is undisclosed by the evidence.   It will not be sufficient to say that appellee was injured either by the negligence of the engineer or truckman.

Manifestly the truckman associated with appellee in his work was his fellow servant.   Both worked under the same foreman and in the same department;

neither having the right to command or control the other. The fact that the truckman was accustomed to give signals for the starting of the cars did not make him appellee's superior. In I. C. R. R. Co. v. Stewart, 63 S. W., 596, 23 Ky. Law Rep., 637, it was held that a switchman could not recover of the railroad company because of the negligence of another switchman in giving improper signals, as they were fellow servants. Indeed, it seems to be conceded by counsel for appellee that he and the truckman were fellow servants, so, even if it be admitted that the engineer was appellee's superior in appellant's service, as contended by the former, as at most the testimony only tends to prove that appellee's injuries may have resulted from the negligence of the engineer or truckman, and the inference that they resulted from the negligence of the truckman, a fellow servant, for which appellant is not liable, being just as strong as that they resulted from the negligence of the engineer, a recovery was unauthorized. The burden was upon appellee to prove that his injuries were caused by the negligence of a servant of appellant superior to himself in authority. The mere fact that he was injured while in appellant's service is not evidence that he was injured by the negligence of a superior, or even of a fellow servant. Nor is such negligence to be presumed, and as appellant, in the absence of proof of negligence, is not required to account for appellee's injuries, the fact that it did not upon the trial attempt to do so gave no support to appellee's contention. (Louisville Gas Co. v. Kaufman-Straus & Co., 105 Ky., 131, 20 Ky. Law Rep., 1069, 48 S. W., 434; Hughes v. R. R. Co., 91 Ky., 526, 13 Ky. Law Rep., 72, 16 S. W., 275; Wintuska's Adm'r v. L. & N. R. R. Co., 20 S. W., 819, 14 Ky. Law Rep., 579.)

While in this State the common-law doctrine of respondeat superior applies where a brakeman on a railroad train is injured by gross negligence upon the part of the engineer of the same train, we have been referred to no case which extends this doctrine to an injury to a servant caused by the negligence of a stationary engineer employed by the same master and engaged in the same service with the injured servant. No evidence was offered in the case at bar which tended to show that the elevator engineer was a representative of the master in respect to other workmen in the master's service engaged in the work of transferring coal from barges in the river to coal sheds on the hill above. In that work, appellee, the engineer, and all other workmen about the barges and elevators, were directed and controlled by a superintendent in appellant's employ, known as the "river boss;" but, according to the proof of the engineer, he did not control or command appellee or the other workmen about him. In a certain sense, appellee and the truckman had as much control over the cars as the engineer. They filled and moved them on the float to the point where they were attached to the cable, and when that was done the engineer controlled their movements until they reached the coal sheds. The engineer was, therefore, a fellow servant of appellee, and if the latter was injured by his negligence—of which there was no proof—such injury was incidental to the work in which both were engaged, and one of the ordinary risks pertaining thereto. Shearman & Redfield on Negligance, section 109; Fort Hill Stone Co. v. Orm's Adm'r, 84 Ky., 183, 8 Ky. Law Rep., 70; Doyle v. Swift Iron & Steel Works, 5 Ky. Law Rep., 59.)

We do not think the evidence shows that appellee and the engineer were employes working in different

departments of the same service, as contended by counsel. There are numerous cases, some of them decided by this court, holding that employes working in a distinct and independent department, although in the same line of service, as engineers operating different trains, are co-agents, and not fellow servants. (Volt v. C. & O. Ry. Co., 95 Ky., 188, 15 Ky. Law Rep., 727, 24 S. W., 119; L. & N. R. R. Co. v. Edmund's Adm'r, 64 S. W., 727, 23 Ky. Law Rep., 1049.)   In discussing the different department doctrine, McKinney on Fellow Servants, page 168,   section 74, says: "The different department limitation or doctrine of consociation seems to be founded entirely on the fact that servants in different departments of a large industrial enterprise are unable to exercise any influence upon one another in the encouragement of caution, and, the supposed reasons for the rule as to fellow servants failing, the courts refuse to apply it." Further on in the same section (74), at page 173, the author presents additional reasons for the doctrine in question as follows: "Unless either their duties are such that they usually bring about personal association between such servants, or unless they are actually co-operating at the time of the injury in the business in hand, or in the same line of employment, they have generally no power to incite each other to caution by counsel, exhortation, or example, or by reporting delinquencies to the master."

The principles on which the separate department rule rests do not apply to this case. Appellant's plant is a small one, and its operatives few in number. They were, at the time appellee received his injuries, so closely associated in work and the area of operations so circumscribed that but one superintendent over all was required.   Each employe had an oppor-

tunity to observe and communicate with his fellow servants, to caution them by counsel, incite them by example, or report their delinquencies to the master. Under such circumstances, all save the superintendent were on an equality, and fellow servants in appellant's employ. We can find no grounds for holding appellant responsible in damages for appellee's injuries, and in our opinion the trial court should have granted the peremptory instruction asked by appellant's counsel at the conclusion of appellee's testimony.

There was no merit in appellant's objection and plea to the jurisdiction of the lower court. Consequently that court properly overruled it. After the transfer of the original action to the federal court, appellee had the right to dismiss it in that court and renew the action in the Campbell Circuit Court; and it is not material that the action was not dismissed in the Federal court until after the second one was instituted in the State court. It is sufficient that the dismissal occurred before the trial of the second and last action. (Dewitt v. C. & O. Ry. Co., 79 S. W., 275, 25 Ky. Law Rep., 2019; Stephenson's Adm'r v. I. C. R. Co., 75 S. W., 260, 25 Ky. Law Rep., 442; Pierce's Adm'r v. Ill. C. R. Co., 86 S. W., 703, 27 Ky. Law Rep., 801; Ill. C. R. Co. v. Jones' Adm'r, 118 Ky., 158, 80 S. W., 484, 26 Ky. Law Rep., 31.)

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with the opinion.

JUDGE NUNN dissents from so much of the foregoing opinion as holds the engineer a fellow servant of the appellee.