CASE 59.—ACTION BY RUFUS CHILDERS' ADMINISTRATOR.
          AGAINST THE GOULD CONSTRUCTION COMPANY
          FOR DAMAGES FOR DECEDENT'S DEATH.—Oct. 1.

## Gould Const. Co. v. Childers' Admr.

Appeal from Rockcastle Circuit Court.

L. F. JOHNSON, Special Judge.

·Judgment for plaintiff defendant appeals—Affirmed.

1.  Master and Servant—Injury to Employe—Vice Principals.— Where the foreman of work goes away for a short time and puts another in charge in his place during his absence, such other person for the time being is a vice principal, for whose negligence in giving orders in the execution of the work, resulting in injury to a laborer on the work, the master is

Gould Const. Co. v. Childers' Admr.

liable, as it would have been for such negligence of the regular foreman.

2. Same.—Negligence of the foreman in charge of raising logs onto a bridge in course of construction, in giving a signal to the engineer to drop the log when it was suspended several feet above the truck on which it was to be placed, resulting in injury to a workman whose duty it was to take hold of and guide the logs to their position, was negligence of a vice principal.

3. Same—Contributory Negligence.—From a river and between the two tracks of a bridge in course of construction, logs 12 feet long and 1 foot thick, were being raised, by an engine and a rope tied at the middle of the logs, and placed on a truck lengthwise thereof; a man being stationed at each end of the truck to take hold of the ends of the logs and guide them as they were lowered onto it. Held that, the end of a log suspended above the truck by the rope having swung off to the side, so that the man at the end of the truck could not reach it, it was not contributory negligence for him to go to the side of the truck to pull it back in position; he not being bound to anticipate that the foreman would negligently give the engineer the signal to drop the log before it was in position, and while it was several feet above the truck, and that it would rebound and hit him, throwing him into the river.

4. Death—Damages.—A verdict of $4,000 for death of a healthy young man 24 years old is reasonable.

J. N. SHARP for appellant

We submit that this case shall be reversed.

1. Because the law is that the servant is bound at his peril to select a position which will protect him from unnecessary risks in so far as they are known or ought to have been known, and when he takes a position obviously more dangerous than another which was available, he is guilty of contributory negligence and there can be no recovery.

2. Because appellee's intestate was the fellow servant of McEwan the acting foreman of those engaged in the work, whose negligence caused his death.

### AUTHORITIES CITED.

Crookstone Lumber Co. v. Bruton, 149 Fed., 685; Gilbert v. B. C. R. R. Co., 128 Fed.; 529; Brice v. L. & N. R. R. Co., 10

Gould Const. Co. v. Childers' Admr.

Ky. Law Rep., 526; Helm v. L. & N. R. R. Co., 17 Ky. Law Rep.. 1004; R. R. Co. v. Jones, 95 U. S., 439; Dawson v. C. R. I. Co., 114 Fed., 870; Erie R. R. Co. v. Cain, 118 Fed., 223; Labott, Master and Servant, 334.

ROBERT HARDING for appellee.

C. C. WILLIAMS and GREEN & VANWINKLE of counsel.

We submit:

,1. That the sole cause of intestate's death was the wrongful act on the part of acting foreman McEwan in giving the signal in obedience to which those in charge of the machinery let the log fall, which struck and knocked deceased from the bridge and killed him.

2. The acting foreman was not the fellow servant of deceased. The regular foreman was absent and in his absence McEwan always took his place and regulated, directed and controlled the movements of those in charge of the machinery, and was ,o all "intents and purposes" the foreman for the time being.

### CITATIONS.

L. & N. R. R. Co. v. Sullivan's Admr., 25 Ky. Law Rep., 855; L. & N. R. R. Co. v. Moore, 83 Ky., 680; Mayfield Woolen Mills v. Frazier, 25 Ky. Law Rep., 2263; Red River Lumber Co. v. Newkirk, 12 Ky. Law Rep., 635.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

The Gould Construction Company was engaged in constructing a double-track railroad bridge across Rockcastle river. The tracks were some 8 or 10 feet apart, and the ends of the cross-ties were so far apart as to leave an opening of about 3 feet between them. Through this opening the construction company was drawing up logs from below, and placing them on trucks which were loaded on one of the railroad tracks. The logs were about 12 feet long and 12 inches in diameter. To get them up a rope attached to a

derrick was let down and fastened to one log at a time, and this was then raised through the opening by machinery to a point above the bridge, and then lowered to the truck placed to receive it. One man was stationed at the engine and controlled it. Another was stationed at a pulley and guided the rope. Men under the bridge tied the rope to the log, and when it was ready the foreman, standing on the bridge, gave the signal to the engineer, who hoisted it up; and when it had reached the proper height he gave him the stop signal. In order to get the log placed on the truck properly, one man was placed at each end of the truck, and it was the duty of these two men, when the log had been raised to the proper height and was lowered, to take hold of the ends of the log and guide it to its proper position on the truck. The regular position of these two men was at the ends of the truck. The ties on which the truck rested extended out about 6 inches beyond the side of the truck. Childers and one James Neil were the men at the truck. The foreman had gone to the express office, and had put in his place a man named McEwan while he was gone. When the log was brought up the small end of the log was toward Childers, and, as the large end was the heavier, it hung lower down than the small end. The log, being tied in the middle by the rope, would not always swing parallel with the track, and the small end of this log swung out to the side, next to the opening between the two tracks. To pull it back to its position Childers stepped to the side of the truck, and, standing there, was pushing the log back to its position, when McEwan suddenly gave the signal to the engineer to let the log drop. The engineer obeyed the signal. The log dropped to the truck through a space of about 4

feet.  The large end striking first, the smaller end was thrown around against Childers, striking him on the point of the chin and knocking him from the bridge.  He fell to the river below, a distance of about 60 feet, and when rescued was dead.  This suit was brought by his administrator to recover for his death, on the ground that there was negligence on the part of McEwan in giving the engineer the drop signal at the time he did, and that this was the cause of Childers' death.  The answer controverted the allegations of the petition, and on a trial the jury found for the plaintiff, assessing the damages at $4,000. The defendant appeals.

The first question to be considered on the appeal is whether the court should have instructed the jury peremptorily to find for the defendant.  It is insisted that this should have been done for two reasons: First, because McEwan was a fellow servant of Childers; second, because Childers would not have been hurt if he had remained at the end of the truck, and it was negligence of him to go to the side of the truck.  It is also insisted that, if there was any evidence to take the case to the jury, the verdict is palpably against the evidence, and should be set aside.

1. If the foreman had not gone to the express office, and had remained on the bridge continuing to give signals as before, it would hardly be maintained that the company would not be responsible for his negligence.  That there was negligence on the part of McEwan is manifest.  The custom was to lower the log gradually until it reached the truck.  Any one would know that as large an object as this, if dropped through a space of 4 feet suddenly, was liable to hurt the man at the truck, whose duty it was to guide it into position and load the truck.  Instead of giving

the drop signal, when McEwan saw the man take hold of the log to push it over to its proper place, he should have given the engineer the signal to let it down slowly; and, if this had been done, Childers would not have been hurt. The drop signal should not have been given until the log had reached the truck and been placed in its proper position. McEwan could see the log. He could see the men at the truck. He could not but know that Childers was at the side of the truck, and that the dropping of the log at the time it was dropped would imperil him. We do not think it is material that McEwan was not the regular boss. He was there at the time in the place of the boss. The gang of men had not been left without any head. McEwan for the time stood in the place of the boss, and the men were under the same obligation to obey his orders as the orders of the boss. He was not at the time a fellow laborer. The other men could not control him, or exercise any supervision over him. His signals were his orders, and it was their duty to obey these orders. In giving these orders he represented the master, and they were not his equals, but his inferiors, for the time being. The case of Dana v. Blackburn, 121 Ky. 706, 90 S. W. 237, 28 Ky. Law Rep. 695, is not in point. There it was held that the engineer was a fellow servant of the men who loaded the coal at a coal elevator, and that one of the loaders was a fellow servant of the other loader. The same rule was in effect applied in Cooper's Adm'r v. Oscar Daniels Co., 96 S. W. 1100, 29 Ky. Law Rep. 1172. There it was also held that the engineer in charge of the engine employed in lifting the girders in a building was a fellow servant of the other men employed in handling the girders. But this case does not turn on the negligence of the engineer. The engineer here

simply obeyed the signal that was given him. The
negligence was in the giving of the signals, and these
signals were given by the man who was directing the
work, and who for the time being was the foreman.

2. Every one knows that a log 1 foot thick and 12
feet long, tied in the center with a rope, when drawn
up will not always stay in one position, and that when
it got above the truck it might be at right angles to
the track, or parallel with it, or in any position be-
tween the two, so that it must necessarily be that the
men who had to handle the log would have to leave
the ends of the truck at times and push the log at
the side back to its position. The testimony for the
plaintiff clearly shows that such was the case when
Childers went to the side of the truck. He could not
reach the log from the end of the truck, and he went
to the side, because that was the only practicable way
of getting it into position. He was not, therefore,
guilty of contributory negligence in taking this posi-
tion. He was not required to anticipate that the log
would be dropped before it reached the truck, or to
anticipate, if it was dropped, which way it would
jump when it rebounded on the truck. In cases of
this sort the question of contributory negligence is
ordinarily for the jury, and in this case there was
no error in submitting the question of contributory
negligence to the jury.

The weight of the evidence sustains the verdict
of the jury. There was conflict in the testimony on
several questions; but we think the facts as we have
stated them are shown by the weight of the evidence.
The instructions of the court submitted to the jury
substantially the material questions in the case.
There was no showing made which would warrant the
court in continuing the case for the defendant after

the plaintiff's proof was introduced on the trial. The decedent was a healthy young man 24 years of age. The verdict for $4,000 is a reasonable one, and on the whole record we see no reason for disturbing it.

Judgment affirmed.