## Wiltshire's Administratrix v. Kister, Jr.

(Decided November 28, 1913).

### Appeal from Warren Circuit Court.

1. Appeal—Instructions.—In an action by an administrator to recover damages for the death of his decedent, alleged to have been caused by a defective boiler and by the negligence and incomptency of defendant's engineer, the omission of the word "alone" from an instruction telling the jury that although they believed from the evidence that the boiler was defective and that the explosion was caused by such defect, they should find for defendant unless they further believed from the evidence that such defect was known to the defendant, or by the exercise of ordinary care could have been known to him, held not misleading or prejudicial in ignoring plaintiff's right to recover for the negligence or incompentency of the engineer, when considered in connection with another instruction authorizing a recovery for the negligence of the engineer provided he was incompetent and his incompetency was known, or by the exercise of ordinary care could have been known, by the defendant.

2. Master and Servant—Fellow Servant—Liability of Master.—The engineer in charge of a stationary engine in a small saw mill and an edger who works by his side are fellow servants, and when the master has used ordinary care to employ a competent engineer he is not liable for either the negligence or wilful or malicious recklessness of the engineer, whether acting within the scope of his employment or not.

3. Appeal—Instructions.—In an action by the administrator to recover damages for the death of his decedent, alleged to have been caused by a defective boiler and by the negligence and incompetency of the engineer in charge, an instruction telling the jury that if they believed from the evidence that the master used ordinary care in the selection of a competent engineer the master was not liable if the decedent's injuries were caused by the wilful or malicious recklessness of the engineer held not prejudicial because of the omission of the word "alone," in view of the fact that by another instruction the court told the jury to find for the plaintiff if decedent's injuries were caused by the explosion of a defective boiler and its defective condition was known, or by the exercise of ordinary care could have been known, to the defendant.

B. F. WALLACE, B. F. PROCTOR and A. J. G. WELLS for appellant.

T. W. and R. C. P. THOMAS and GRIDER & HARLIN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

James Wiltshire was killed by the explosion of a boiler owned and operated by the defendant, Frank L. Kister, Jr. His administratrix, Mary E. Wiltshire, brought this action to recover damages for his death. From a verdict and judgment in favor of defendant plaintiff appeals.

The facts are these: Defendant at the time of the accident operated a planing mill in the city of Bowling Green. On March 28, 1910, the boiler which furnished the power for the planing mill exploded. James Wiltshire was killed and several others were injured. At the time of the accident James Wiltshire ran the edger. Finis Coleman was the regular engineer at the mill. On the day of the accident he was summoned to the police court. His brother, Richard Coleman, took his place as engineer when the mill resumed operations after the noon hour. The explosion occurred shortly after one o'clock, p. m. The saw mill consisted of a shed about 60 feet long and 40 feet wide. Under the shed was the boiler, the engine, the edger, the saw and carriage. A few feet to the east of the shed were the tool house and the dust chute. The engine was about two feet from the edge of the boiler. The edger was about a foot from the side of the boiler, and the edger table, which was about 30 feet long, extended to within four feet of the carriage. John Kister, the foreman in charge, was engaged in filing a saw. When injured, James Wiltshire was running the edger.

Plaintiff based her right to recover on three grounds: (1) Incompetency of the engineer; (2) defective condition of the boiler; (3) defective condition of the pop valve.

On the question of the competency of the engineer, R. C. Coleman, Porter Wyatt, a young man 22 years of age, testified that in his opinion an experience of four or five months in running a laundry engine would not qualify one to run the engine at the saw mill. On cross-examination, however, he testified that he had never worked at either of the laundries where R. C. Coleman had been employed, nor did he know how much steam each of the engines in those laundries carried, nor had he ever worked with Dick Coleman. Joe Nordlow, a chauffeur, testified that he had had several years experience in running engines. He had known Dick Cole-

man four or five years. In his opinion, Dick Coleman was not competent. On cross-examination he stated that he did not know the number of pounds of steam the engines in either of the Bowling Green laundries carried. He had stepped in each of them on a few occasions, but did not make any examination of the engine or boiler where Dick Coleman was at work. He had had three days' experience in repairing boilers.

On the other hand, Coleman's competency was proven by John Kister, F. L. Kister, Jr., Finis Coleman, B. J. Borrone, Sam Moseley and George H. Moseley. Mr. Borrone, of the Bowling Green Steam Laundry, testified that prior to the explosion Coleman had operated his engine for six months or more, and he regarded him as a competent, skillful engineer. The boiler in his laundry was a 50-horse power boiler, which was the same horse power as the one that exploded. Sam Moseley and George H. Moseley, proprietors of the Troy Laundry, who had employed R. C. Coleman for nearly a year prior to the explosion, testified that Coleman was a competent engineer.

There was no proof that defendant knew of Coleman's alleged incompetency, or that he could have known of it by the exercise of ordinary care.

There was evidence to the effect that the engineer had on 165 pounds of steam. When his attention was called to this fact the engineer said "I don't give a dam if I blow it into hell." One of two witnesses testified that the boiler was old and defective and the pop valve would not work. It was also shown that the boiler had been patched. On the other hand, the defendant showed that the pop valve worked properly and was set to pop off at 130 pounds pressure. At the time of the accident the gauge showed 130 to 135 pounds of steam, and was popping off. Unless there was some hidden defect in the boiler, 165 pounds of steam could have been carried without danger. While it is true that the boiler had been patched the patches survived the explosion while other parts of the boiler were wrecked. Defendant further proved that the hammer test had been used on the boiler when it was set up. Only a short time before the explosion it had been thoroughly gone over, both inside and out. Upon the cause of the explosion, defendant introduced H. G. Brownell, a boiler expert of many years standing, who testified that the defect was one of lamination. This defect was in one of the rings of the boiler

and not in the other three. The defective place was not discoverable by ordinary inspection, either within or without.

Complaint is made of instructions 10 and 11, which are as follows:

"10. Although the jury may believe from the evidence that the said boiler was defective and that said explosion was caused by such defect, unless they shall further believe from the evidence that such defect was known to the defendant, Kister, or could have been known by him, by the exercise of ordinary care, they will find for the defendant, Kister, and if said defect, if there was a defect in said boiler, was hidden or latent so that it was not known to the defendant, Kister, or could not have been known by him, in the exercise of ordinary care, the jury will find for the defendant."

"11. If the jury believe from the evidence that the defendant, Kister, or his agent, used ordinary care in the selection of a competent engineer and that said boiler exploded by reason of the willful or malicious recklessness of said engineer not acting in the scope of his employment, then the defendant is not responsible in law for said willful or malicious act, if any, of said engineer, and the jury will find for the defendant."

It is claimed that instruction No. 10 is erroneous in that it authorizes a verdict for the defendant without requiring the jury to believe that the explosion was caused alone by the defective boiler, thus ignoring the right of plaintiff to recover for the negligence or incompetency of the engineer. The court, however, in former instructions had authorized a verdict for plaintiff if the jury believed from the evidence that the explosion was caused by the defective condition of the boiler, and such defective condition, if any, was known, or by the exercise of ordinary care could have been known, by the defendant. He had further authorized a recovery by plaintiff if the decedent's injuries were caused by the negligence of the engineer, and the jury believed that the engineer was incompetent, and his incompetency, if any, was known, or by the exercise of ordinary care could have been known, by the defendant. While it would have been better to frame instruction No. 10 so as to express the idea that the explosion was caused alone by the defective boiler, yet considering the fact that another instruction authorized a recovery by plaintiff based on the negligence and incompetency of the engineer, the

jury had a right, under that instruction, to find for plaintiff notwithstanding instruction No. 10. In passing on the propriety of an instruction it is the rule to consider all the instructions, and when thus considered, we fail to see how the omission of the word "alone" was either misleading to the jury or prejudicial to the substantial rights of plaintiff. Nor do we think the instruction is erroneous because of its concluding language to the effect that such defect, if there was a defect in said boiler, was hidden or latent so that it was not known to the defendant, Kister, or could not have been known to him by the exercise of ordinary care, the jury should find for the defendant. While unnecessary, it was simply a repetition in a different form of the same idea expressed in the previous part of the instruction.

Instruction No. 11 was given under the following circumstances: During the argument of counsel for plaintiff, counsel stated that Judge Grider, counsel for defendant, had said that plaintiff could not recover if the engineer intentionally blew up the boiler. Counsel for plaintiff then said: "I say to you that is not the law, and the court has given no such instruction. The law is that the master is not excusable by the intentional wrong of his servant within the scope of his employment." Thereupon the court interrupted counsel for plaintiff and told him unless he would withdraw that statement he would prepare another instruction. Counsel for plaintiff declined to do so. Thereupon the court prepared instruction No. 11. As prepared and read to the jury it did not contain the words "not acting within the scope of his authority." After reading it to the jury the court inserted those words. Counsel for plaintiff insists that instruction No. 11 should not have been given, for it clearly appeared that Coleman, the engineer, who was firing the engine, was necessarily acting within the scope of his authority. We deem it unnecessary to enter into a discussion of when or under what circumstances the master will be liable for the willful or malicious recklessness of his servant. In the present case the engineer was not superior in authority to the decedent, nor were they engaged in separate departments of work. On the contrary, they worked side by side, and were brought into immediate contact and association. They were, therefore, fellow servants. Bell-Knox Coal Co. v. Gregory, 152 Ky., 415; Dana v. Blackburn, 121 Ky., 706. That being true, defendant was not liable for either the

negligence or the willful or malicious recklessness of the engineer, whether acting within the scope of his employment or not, provided he or his agent in charge used ordinary care to employ a competent engineer. In instruction No. 11 the court told the jury that if they believed from the evidence that the defendant, Kister, or his agent, used ordinary care in the selection of a competent engineer, and that the boiler exploded by reason of the willful or malicious recklessness of said engineer not acting within the scope of his employment, then they should find for the defendant. Since the defendant was not liable at all for the acts of the engineer, whether acting within the scope of his employment or not, if as a matter of fact the defendant or his agent in charge used ordinary care in the selection of a competent engineer, it follows that neither the submission to the jury of the question whether or not the engineer was acting within the scope of his employment, nor the insertion of the language "not acting within the scope of his employment" after the instruction was read was prejudicial to the substantial rights of the defendant.

Instruction No. 11 is also criticized because it ignores plaintiff's right to recover on account of the defective condition of the boiler. By other instructions, however, the court had authorized a recovery for the defective condition of the boiler, and for the same reasons as pointed out in the case of instruction No. 10, we conclude that the omission of the word "alone" in instruction No. 11 was not misleading or prejudicial to defendant.

Judgment affirmed.