## Kaufman v. Peter-Burghard Stone Company.

(Decided May 31, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Master and Servant—Presumption—Notice.—A man of average intelligence will be presumed to know that a heavy stone on edge elevated at one end several inches from the floor by means of a rope attached to a crane and resting on the floor at the heavy end will have a tendency to tilt from the nature of its position, and an employe must take notice of this simple law of gravitation.

2. Master and Servant—Negligence.—An employe whose duty it is to place a wooden block under a stone which is set on edge and elevated at one end several inches above the floor by a rope attached to a crane while the other and heavy end is resting on the floor, and whose duty it is to brace or steady the stone slab with one hand while he places the wooden block under it with the other cannot recover if an injury is caused by his failure to so steady or brace it.

3. Master and Servant—Injury of Servant—Negligence of Fellow Workman.—An employe who is injured because a stone falls on him by reason of the failure of his fellow workman to steady or brace the suspended slab while he places a wooden block under it cannot recover because of such fellow workman's failure.

4. Master and Servant—Injury to Servant Caused by Fellow Workman.—The operator of a crane used in unloading slabs of stone from a car and a hooker at work in the car in placing ropes around the stone for the purpose of removal are fellow servants, and the hooker cannot recover for an injury resulting from a movement of the crane by his fellow workman.

EDWARDS, OGDEN & PEAK for appellant.

GIBSON & CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

In June, 1913, appellant was an employe of the appellee in its stone-yard in Louisville.

While assisting in the unloading of a car of rough stone he was injured and brought this suit against the company for damages. At the conclusion of the plaintiff's evidence the trial court directed a verdict for the defendant and from that action of the court the plaintiff has appealed.

In its stone-yard the appellee operated a large traveling crane which runs from one end of the yard to

another on an overhead railway; this crane is used in the unloading of stone from railroad cars which are run into the plant on a railroad switch. The unloading is done by one man who operates the crane above, and two men who get into the car and fasten ropes attached to the crane around the slabs of stone, and the stone is then lifted by the crane and carried by it to other parts of the yard. The man in the car who places the rope around the slabs of stone is called a "hooker," as is the man at the point in the yard where the stone is unloaded. The regular "hooker" at that time was a man named Peter Voll.

The day before the injury complained of a flat car of granite slabs had been run into the yard to be unloaded; they were irregular in size but their dimensions were approximately eight or ten feet long, five feet wide and one inch thick. They were loaded in the car on edge, about half in each end of the car, and at each end about one-half of the slabs leaned slightly toward one side of the car and the other half towards the other side of the car; the railroad track runs north and south and about one-half of the slabs in each end of the car rested against the east side of the car and about one-half on the west side, and the bottoms of the slabs practically met in the center of the car.

In unloading these slabs, five of them were handled by the crane at one time; the men in the car would first by the use of crowbars or other instruments, prize out five of the slabs, place a small rope around them near the end, the rope being attached to the crane, and the crane would then lift that end of the five slabs some ten or twelve inches from the floor of the car, leaving the other ends of the slabs resting on the floor, and it was then the duty of the hooker, while the slabs were in this position, to place under them a wooden block which would hold them in that position until a larger and heavier rope could be passed under the slabs at about their center, when they would all be lifted by means of the larger rope and carried by the crane to the place in the yard where they were expected to go.

On the day before the accident appellant and Peter Voll, acting as "hookers," had unloaded half of the car, Voll being an experienced hooker, and on the day of the accident appellant and his brother John, who was also an experienced hooker, were engaged in unloading

from the car the remainder of the stone. Five slabs had been elevated at one end by means of the small rope, about ten or twelve inches from the floor of the car, the other end of the five slabs resting on the floor. The slabs, just before the accident, as above indicated, were leaning slightly towards the east side of the car, and appellant being on the west side of the slabs, started to place the wooden block under them so that the heavy rope might be slipped under and fastened about the center, and although the five slabs were immediately before the accident leaning eastward while thus suspended at one end and resting on the floor of the car at the other end, yet just as he started to place the wooden block under them, they, in some way, which is not explained in the evidence, tilted to the westward and fell on and injured him.

The foreman, Borgmier, was present at the time in the car, although he was some ten or twelve feet away, and had given to appellant and his brother general directions as to the doing of the work, but there is no claim that he at the time of or before the accident gave any specific directions as to the placing of the wooden block under the slabs or as to the manner of doing it.

Appellant himself testifies in substance as above stated, but expressly states that he does not know what caused the slabs to fall to the west or what caused them to fall at all. He suggests in his testimony, however, that it might have been because the slabs were heavier at the end resting on the floor than they were at the end which was elevated by means of the rope, or that it might have been because the car was not setting level on the track, or that it might have been because the man in charge of the crane moved the traveler overhead.

The foreman, Borgmier, also testifies that he does not know what caused the slabs to fall.

Voll, the experienced hooker, was introduced and said the work was being done in the only way in which it could be done, and that it was proper in placing the wooden block under the slabs while they were so elevated at one end to place one hand against them so as to steady them while the block was placed under with the other hand, and that it was also customary for the other hooker to steady the slabs while the wooden block was being placed under them. The brother of appellant,

although an experienced hooker and present at the time of the accident, was not introduced as a witness.

It is apparent that this unloading of stone in the manner indicated is more or less a dangerous occupation, but it is plain also that, mechanically speaking, it is a very simple one. A man of average intelligence must know that a heavy stone on edge, elevated at one end several inches from the floor and resting on the floor at the heavy end will have a tendency to tilt from the very nature of its position, and an employe must take notice of this simple law of gravitation.

It is difficult to understand from the evidence, as we have recited it, of what the negligence of the master consisted, but an analysis of the evidence on the contrary is convincing that the accident happened from one of three causes: First, either because the plaintiff himself did not with one hand brace or steady the slabs, while he placed the wooden block under them with the other, or, second, because his brother, his fellow workman, did not brace or steady the slabs while he was placing the wooden block under them, or, third, because there was some movement of the crane by the operator thereof just at the time the wooden block was being placed under the slabs.

If it happened from either of these causes the defendant was not liable, for if the plaintiff must take notice, as we have seen, of the simple rule of gravitation that slabs so situated might tilt, and it was his duty, when placing the wooden block under them, to brace them with one hand to prevent that tilting, the accident was the result of his failure so to brace them and he cannot recover. On the other hand if it happened because of the failure either of his brother to brace or steady the stone, or because of some movement of the crane by the operator thereof, there can be no recovery because they were each his fellow servants engaged with him in the same line of employment, all working under the same foreman and in the prosecution of the same work, and neither having the right to give orders to the other. Cooper's Admr. v. Oscar Daniels Co., 29 K. L. R. 1172; Dana v. Blackburn, 121 Ky. 706.

There was a failure to show negligence upon the part of the master; the real cause of the accident is speculative under the evidence, and the most reasonable

cause being the negligence of the fellow servant for which no recovery can be had the peremptory instruction was properly given.

Judgment affirmed.