Joseph Wilson RUBLE, Infant, By etc.,
Appellant,

v.

Mrs. H. T. STONE, Appellee.

Court of Appeals of Kentucky.

June 28, 1968.

Walter B. Smith, Shelbyville, for appellant.

Norman A. Curtis, Curtis, Curtis & Rose, Louisville, for appellee.

STEINFELD, Judge.

During July 1964 James Whitt and appellant, Joseph Wilson Ruble, both grandsons of Mrs. H. T. Stone were working for her on a farm which she owned and operated. James Whitt was a deaf-mute, 14 years and 8 months of age and Joseph Ruble was 13 years and 7 months old. On the 21st day of that month she directed them to take her tractor and go to the barn to clean it. Ruble drove to the barn and later Whitt operated the tractor on their return. When they had almost reached the house they discovered that they had left something at the barn so they turned around to go back with Whitt driving and Ruble riding on the fender. They struck a stone in the road, went on to wet grass, and Ruble was thrown off. The tractor passed over Ruble's left leg severely injuring it and then the tractor turned over. Through his father, Ruble sued Mrs. Stone claiming that she and her agents, servants and employees were negligent.

Ruble completed the presentation of his case, and after counsel for Mrs. Stone had introduced some of her proof he moved for a directed verdict. The trial court sustained the motion and entered judgment dismissing the action, from which Ruble appeals. We affirm.

Appellant asserts that Mrs. Stone should have instructed the boys of the danger incident to the use of her D–10 Allis-Chalmers tractor equipped with an accelerator (take-off) which automatically increased the power when the tractor encountered resistance. It is appellant's contention that when the tractor struck the stone the accelerator automatically increased the speed and power and this caused Whitt to lose control and Ruble to fall off.

James Whitt had attended a deaf-mute school for the eight years preceding the summer of 1964. One of his teachers estimated that his mentality was about that of a child in the third or fourth grade— that is a ten year old child. The superintendent, principal and teacher testified that Whitt had taken eight years to reach the fourth grade.

There was considerable confusion and conflict in the testimony as to the number of times, if any, that Whitt had operated this particular tractor. On discovery deposition Joseph Ruble was asked and answered:

"Q. Well, didn't Whitt operate the tractor with you, sometimes you would operate it and sometimes he would operate it?

A. Yes.

Q. And that was as far back as '63 wasn't it?

A. Well, we didn't really start operating it until that year that we had the accident.

Q. Sir?

A. We really didn't start operating it until that year that we had the accident. He was just teaching me the gears and stuff.

Q. Oh. Well, then you hadn't operated the tractor and neither had he before 1964, then?

A. Not that tractor.

Q. But other tractors?

A. Yes.

Q. And he had operated other tractors and so had you before '64?

A. I don't know whether he had or not.

Q. But you had?

A. Yes.

Q. But you don't know whether he had or not?

A. No.

Q. * * * Now in 1964 you and he both operated Mrs. Stone's tractor?

A. Yes, sir."

In speaking of 1964:

"Q. Well, both he and you operated the tractor?

A. Yes, sir.

Q. And sometimes you would operate it and sometimes he would operate it?

A. Yes, sir."

* * * * * *

"Q. But both you and Mr. Whitt had operated this tractor during 1964 many times had you not?               .

A. Yes, sir.

Q. And you had observed James Whitt operating the tractor?

A. You mean at that time?

Q. No, I mean during 1964.

A. Yes, sir.

Q. And he was what you would consider a competent I mean a good tractor operator?

A. Pretty good."

In his deposition he also said that he had received schooling in the operation of tractors and he felt he was experienced enough in their operation to enter the tractor-driving contest at the county fair and that prior to being hurt he intended to do so. On his trial he admitted that he had driven the Allis-Chalmers tractor "3 or 4 times". James Whitt testified that he had operated a tractor a year before the accident happened and that he had been taught how to operate tractors. For the purposes of discovery Whitt, through an interpreter Charles B. Grow, was interrogated by way of deposition which was filed. He was asked and answered:

"Q. About how many times and over what period of time had he operated the tractor of Mrs. Stone that was involved in this action?

A. (Per Mr. Grow) Eight or nine times.

Q. And what other tractors had he operated other than Mrs. Stone's?

A. (Per Mr. Grow) A John Deere, a Ford. I forgotten the name—he thinks another Ford tractor."

However, on the trial he denied that he had ever driven the Allis-Chalmers tractor before the afternoon of the accident and said he did not know what a governor on a tractor was and had not been instructed concerning it. On cross examination he said that the testimony in his deposition was true.

■ It is readily apparent from the admissions of Ruble and the testimony of Whitt that these young boys were well experienced in the operation of tractors. The dangers of improper driving must have been just as apparent to Ruble as to Mrs. Stone. Capps v. Pence, Ky., 280 S.W.2d 168 (1955) and McCormick Harvesting Mach. Co. v. Liter, 23 Ky.Law Rep. 2154, 66 S.W. 761 (Ky.1902). The evidence is insufficient to support a finding that Mrs. Stone's failure to instruct was negligence or that it was the proximate cause of the accident. Klingenfus v. Dunaway, Adm'x, Ky., 402 S.W.2d 844 (1966).

■ Another argument advanced by appellant is that Mrs. Stone was negligent in permitting the boys to use the tractor. We disagree for the record shows that the use of tractors by these two farm boys was common. We held "(I)t is customary in farm operations for children in their early teens to cut hay with tractors." Wright v. O'Neal, Ky., 320 S.W.2d 606 (1959).

■ Appellant also relies upon Burdette v. Thompson, Ky., 420 S.W.2d 548 (1967), in which we stated that there is a duty an employer owes to an employee to warn and instruct " * * * in the use of tools and appliances with which they are required to work where the business is hazardous or dangerous * * *." However, this rule of law is qualified in that where the employee is experienced in the use of the tool or appliance the necessity of instruction is tempered by the knowledge of the employee. We conclude that because of the experience of both Ruble and Whitt in the operation of tractors it cannot be said that Mrs. Stone was negligent in not further instructing them in the use of this tractor.

■ Furthermore, the law in this state is that when work-connected dangers are obvious and the employee voluntarily performs the task "and where there is no showing of negligence on the part of the master the servant may not recover for an injury he sustains." Chesapeake & O. Ry. Co. v. Lilly, 300 Ky. 100, 188 S.W.2d 105 (1945).

■ Appellant cites Owensboro Undertaking and Livery Ass'n v. Henderson, 273 Ky. 112, 115 S.W.2d 563 (1938), in which we said that "Automobiles are 'dangerous instrumentalities' in the hands of incompetent drivers, and an owner is liable for negligence of a driver if the owner knows, or in the exercise of ordinary care should have known, that the person driving the automobile is incompetent to drive it." There is no showing that either Whitt or Ruble were "incompetent drivers", therefore, the Owensboro case is not applicable.

■ Generally appellant claims that Mrs. Stone was responsible for the negligent driving of her servant Whitt. The answer to this is that these two boys were "fellow servants" and under these circumstances the master is not liable. Kaufman v. Peter Burghard Stone Co., 170 Ky. 482, 186 S.W. 125 (1916). Also see Restatement, Agency (2), section 474, which reads as follows:

> "A master is not liable to a servant or subservant who, while acting within the scope of his employment or in connection therewith, is injured solely by the negligence of a fellow servant in the performance of acts not involving a violation of the master's non-delegable duties, unless the servant was coerced or deceived into serving, was too young to appreciate the risks, or was employed in violation of statute."

The action of the court below in dismissing the suit was proper, therefore, the judgment is affirmed.

All concur, except EDWARD P. HILL, J.