# Richmond

O. O. Ashworth, Jr. v. Sallie Baker.

January 16, 1956.

Record No. 4422.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*Leo P. Blair*, for the defendant in error.

Eggleston, J., delivered the opinion of the court.

Sallie Baker, sometimes hereinafter called the plaintiff, while riding in a car driven by Ralph Holden, was injured when that car collided with another driven by O. O. Ashworth, Jr., sometimes hereinafter referred to as the defendant, at the intersection of High and Green streets, in the city of Portsmouth. In an action to recover damages for injuries sustained in the collision the plaintiff has recovered a verdict and judgment of $500 against the defendant.

On his appeal the defendant claims that the verdict is contrary to the law and the evidence in that, (1) he was not guilty of negligence which was a proximate cause of the collision, and (2) Holden, the driver of the car in which the plaintiff was riding, was at the time her servant or agent, was guilty of negligence which proximately caused or contributed to the accident, and hence her right to recover is barred.

On the afternoon of May 22, 1954, the plaintiff, Mrs. Sallie Baker, requested her friend, Ralph Holden, to go with her in his car to the Naval Hospital in Portsmouth and take her friend, Mrs. Donna M. Drewry, to her (Mrs. Baker's) home in the same city. Holden, who had been a friend of both of the young women for several years, agreed to do so.

After picking up Mrs. Drewry at the hospital, at about 3:15 p. m., Holden drove southwardly along Green street. The weather was clear and the pavement dry. Mrs. Drewry sat on the front seat with Holden, while Mrs. Baker, the plaintiff, sat on the rear seat with their mutual friend, Thomas Mannion. The undisputed evidence is that Holden drove along Green street at a moderate rate of speed toward High street. High street is the main business thoroughfare in Portsmouth, runs east and west, is 60 feet wide from curb to curb, is level, smooth paved, and with the conventional painted line indicating the center line of the street. At the northwestern intersection of High and Green streets there is a stop sign requiring southbound vehicles on Green street to come to a stop before entering High street. There are no traffic lights or stop signs at this intersection regulating the flow of traffic on High Street.

According to Holden's testimony, he approached the intersection at a speed of approximately 15 miles an hour and in obedience to the sign came to a full stop before entering High street. He looked both ways and saw the Ashworth car to his right, about 100 to 125 feet west of the intersection. It appeared to be approaching at about 20 miles an hour. Thinking that he had ample time to cross in front of

it, he put his car in low gear and started through the intersection, intending to continue his way southwardly along Green street. He applied his brakes just as he "got across the intersection" and slowed down for pedestrians who were using the walkway across Green street along the southern side of High street. When his car was entirely beyond or south of the center line of High street it was struck on the right rear door by the front of the Ashworth car. Holden said that after the impact he drove his car southwardly along Green street to a point about 50 feet south of High street and remained there until the investigating police officers came to the scene.

The passengers, including the plaintiff, corroborated Holden's testimony that he approached the intersection at a moderate rate of speed and came to a full stop before entering High street. Mrs. Drewry, sitting on the front seat with him, corroborated Holden's statement that the Ashworth car was from 100 to 125 feet west of the intersection when Holden started into the intersection.

As the result of the collision Mrs. Baker received cuts and bruises about the face but was not seriously injured.

Ashworth testified that just before the collision he was proceeding east on High street accompanied by R. H. L. Chichester. Both were local officials of the Chesapeake & Potomac Telephone Company. He further testified that he stopped for a red traffic light at Effingham street, a block west of Green street; that when the light "turned green" he proceeded eastwardly along High street toward Green street, and that as he did so he pulled gradually into the right-hand traffic lane, preparatory to turning off of High street at Washington, a block east of Green street. He described the accident thus:

"I approached Green Street. As I said, I very gradually and slowly maneuvered into the right hand of the two driving lanes on High street. I approached Green street when suddenly I saw a car coming across the intersection, * * * . That car was proceeding somewhere in the neighborhood of 15 to 20 miles an hour. At the same moment—it is a simultaneous reaction when a thing like that occurs—at the time I observed the car and slammed on the brakes Mr. Chichester said, 'Watch out.' At the moment of impact, as a complete and voluntary (sic) reaction, I turned my wheel to the right which meant the greatest damage was done to my left front fender, because it was obvious that I could not stop. My foot was on the brake. The impact was about to occur. Completely and voluntarily (sic) I turned the wheel to the right to try to lessen the impact if I

could. The greater damage to Mr. Holden's car was done to the right front and right rear door."

He further testified that Holden did not apply his brakes before the impact and that the Holden car went about half a block beyond the intersection before coming to a stop. The Ashworth car, he said, "stopped at the point of impact." Ashworth estimated the speed of his own car, as he approached the intersection, at about 20 miles an hour.

Chichester's testimony corroborated that of Ashworth. He said that the Ashworth car approached the intersection at about 20 miles an hour; that he and Ashworth saw the Holden car at about the same time; that the latter car came into the intersection "quite suddenly," "at considerable speed," and without making any effort to stop. While the Ashworth car left skid marks on the pavement for a distance of 19 feet, there was no evidence that the brakes on the Holden car had been applied before the impact.

There was evidence that after the collision Holden had the appearance of being under the influence of intoxicating liquor. Chichester said, "He obviously was under the influence. His speech was impaired." Ashworth said, "He smelled of alcohol and his speech was thick." The two police officers who appeared at the scene shortly after the collision expressed the same opinion and forbade Holden's driving the car from the scene. But neither the officers nor Ashworth placed any formal charge against Holden.

On the other hand, Holden denied that he was under the influence of intoxicating liquor at the time of the accident. He admitted that he had had "two draught beers" between 11:00 and 11:45 that morning, more than three hours before the collision, but said he had drunk no intoxicating liquor since then. Mannion, who had been with him since 11:00 o'clock that morning, corroborated Holden's statement that he (Holden) had drunk no intoxicating liquor other than the two beers. Furthermore, Mannion said that in his operation of the car Holden gave no indication of being under the influence of liquor and drove in quite a proper manner as he neared the intersection.

In its rulings on the instructions, over the objection of counsel for the plaintiff, the court took the view that in the operation of the car Holden was the servant or agent of the plaintiff, Mrs. Baker. Accordingly, at the request of the defendant, it instructed the jury that if they found from the evidence that Holden was guilty of any negligence which proximately caused or contributed to cause the

collision, the plaintiff was not entitled to recover of the defendant. In other instructions given at the request of the defendant, over the objection of the plaintiff, the court told the jury in substance that the plaintiff could not recover of Ashworth unless they found from the evidence that he was guilty of negligence which was the sole proximate cause of the collision. Notwithstanding these favorable instructions for the defendant, the jury found for the plaintiff.

One of the main contentions of the defendant is that even if he were negligent, which he denied, Holden was likewise guilty of negligence which was a proximate cause of the collision, and that, therefore, under the court's instructions the verdict should have been for the defendant.

In assignments of cross-error the plaintiff has challenged the lower court's ruling that in his operation of the car Holden was the servant or agent of the plaintiff.

In our opinion the position of the plaintiff is correct. The principal evidence relied upon by the defendant to show the master and servant relationship is the testimony of the plaintiff, Mrs. Baker, developed on cross-examination. In explaining why she had not earlier consulted a physician about her own injuries received in the collision, the plaintiff said:

"A. Mrs. Drewry had just been operated on two days prior to that, and after the accident I did not know what condition she would be in from the jar and the shock, and I was anxious to get her home. I really did not think I was hurt as bad as I was until I got home.

"Q. So the job of bringing her home was your job. Is that right?
"A. She was living with me.
"Q. And it was your idea to bring her home. Is that right?
"A. Certainly. She lived there.
"Q. All right. And you got your friend, Mr. Holden, to bring her home in his car. Is that correct?
"A. Yes, sir."

The defendant argues that this evidence, coupled with Holden's testimony that he was bringing Mrs. Drewry to the home of Mrs. Baker, the plaintiff, at the latter's request, is sufficient to establish the relation of master and servant between the plaintiff and Holden.

We do not agree with this contention of the defendant. It is elementary that the power of control of the actions of the supposed servant is an essential element in establishing the existence of the relation of master and servant. Unless the supposed master has the right

to control and direct the conduct of the supposed servant, in the performance of the act in question, the relationship does not exist. See 12 Mich. Jur., Master and Servant, §§ 3, 4, pp. 458, 459, and cases there cited.

The circumstances in *Johnston* v. *Kincheloe,* 164 Va. 370, 180 S. E. 540, were quite similar to those in the present case. Kincheloe had requested Arrington to drive him in the latter's car on an errand for Kincheloe's benefit. On the trip Kincheloe was killed in a collision between the Arrington car and another driven by Johnston. In an action for wrongful death by Kincheloe's personal representative against Johnston the contention was made that Arrington was the servant or employee of Kincheloe and that the negligence of Arrington was imputable to Kincheloe and barred a recovery. We held against that contention, pointing out that, "A master is one who has the power to control, and a servant is one whose duty it is to obey. Plainly, this relationship did not exist here. Kincheloe had no power to control Arrington, and Arrington was not under the necessity of obeying him." (164 Va., at page 374, 180 S. E., at pages 541, 542.) Kincheloe was, we held, a mere passenger in the car.

The same is true in the present case. Holden owned the car and was merely performing an act of courtesy for the plaintiff and their mutual friend, Mrs. Drewry. The plaintiff had no right to control Holden's actions in driving. Both the route he adopted and his manner of driving were entirely within his control. Hence the plaintiff was merely a passenger in the car.

The lower court, then, was wrong in instructing the jury that the negligence, if any, of Holden would bar the plaintiff's right of recovery. In the absence of the relationship of master and servant between her and Holden, the negligence of the latter was not imputable to her. Hence, we need not inquire whether the evidence is sufficient to support the jury's finding that the collision was proximately caused solely by the negligence of the defendant, Ashworth. If it be sufficient to sustain a finding that he was guilty of negligence which in part proximately caused or contributed to the collision, the verdict should stand even though Holden was likewise guilty of negligence which proximately caused or contributed to the accident.

The jury had the right to infer from the testimony of Ashworth that he did not see the Holden car until a moment before the impact. The testimony of the occupants of the Holden car is that at the time of the impact that car had gotten beyond the center line of High

street when it was struck on its right-hand side by the front of the Ashworth car. Neither Ashworth nor Chichester contradict this evidence as to the point of impact. All of the witnesses agree as to the manner in which the two cars collided. From these circumstances the jury may have concluded that the Holden car traveled across one-half of the width of High street, that is, 30 feet, before Ashworth saw it. He said his car was equipped with "excellent brakes" and could have been stopped within twenty feet. It was for the jury to say whether by the exercise of ordinary care Ashworth should have seen the Holden car sooner and taken steps to avoid the collision.

Since the erroneous ruling of the court on the instructions was favorable to the defendant and invited by him, he is not in a position to ask for a reversal of the judgment on account of it. *Burch* v. *Virginia Public Service Co.*, 169 Va. 460, 466, 194 S. E. 698, 700; Burks Pleading and Practice, 4th ed., § 299, p. 536; *Id.*, § 438, pp. 857, 858.

The judgment is

*Affirmed.*