**UNITED SERVICE AUTOMOBILE AS-SOCIATION, Appellant,**

v.

**Andrew Byrd PINKARD and Edward J. Hanks, Administrator of the Estate of Clifton Wiley Hanks, Deceased, Appellees.**

**No. 9988.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 3, 1965.

Decided Jan. 20, 1966.

S. D. Roberts Moore, Roanoke, Va. (Gentry, Locke & Rakes, Roanoke, Va., on brief), for appellant.

Jackson L. Kiser, Martinsville, Va. (Young, Kiser & Frith, Martinsville, Va., on brief), for appellees.

Before SOBELOFF, BOREMAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Circuit Judge:

The question presented by this appeal is one of coverage under an automobile liability insurance policy. Appellee Andrew Byrd Pinkard was driving an automobile owned by Clifton Hanks, who was seated beside him, when the vehicle left the road and struck a telephone pole. Pinkard was injured and Hanks was killed. Hanks' insurer brought a diversity action in the United States District Court to obtain a declaration that it was not obligated under the automobile liability policy issued to Hanks. The insurer asserted that, under the circumstances of the case, which will be presently outlined, Pinkard was an "employee" of Hanks and therefore within the terms

of an exclusion clause of the policy. The District Court denied the requested relief. We affirm.

## I

Hanks and Pinkard both lived in Martinsville, Virginia, and had been good friends for a number of years. Hanks owned a 1955 Oldsmobile, but since he did not have a driver's license, Pinkard occasionally drove him around Martinsville, and several weeks before the accident Pinkard had taken Hanks and his sister to Richmond. Hanks paid Pinkard nothing for driving on any of these trips.

On the evening of June 26, 1963, the two men chanced to meet in front of a 5 & 10 cent store in Martinsville. Hanks asked if Pinkard would take him to Roanoke that evening, a distance of about 50 miles. Pinkard at first hesitated, mentioning that he had nothing to do in Roanoke and did not want to be "standing out around over there," and adding that he was anxious to return home the same evening. Hanks replied that they could come back whenever Pinkard desired, and handed his friend $3.00 which Pinkard testified on adverse examination was viewed by both men as "a little spending money." He further indicated that if he had had some money of his own and Hanks gave him nothing, he would still have driven Hanks to Roanoke.

On the way to Roanoke, Pinkard testified, Hanks dozed off, and when they approached within about a mile of Roanoke he suddenly woke up and grabbed the steering wheel, causing the accident. Pinkard won a $12,000.00 verdict in a state court proceeding against Hanks' estate, but entry of judgment awaits the final outcome of these federal court proceedings.

## II

To escape liability the insurer relies on the following provision:

"This policy does not apply:

\*      \*      \*      \*      \*      \*

(d) under coverage A, to bodily injury to or sickness, disease, or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits thereof are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured \*   \*   \*."

Both parties agree that in this diversity case, Virginia law controls the interpretation of this policy. Consistent with the prevailing law in other jurisdictions, the Supreme Court of Appeals of Virginia has laid down the rule to be followed in the construction of such clauses. The court has said:

"The text writers and the cases from the appellate courts of nearly all of the states accentuate the rule that ambiguous and doubtful language must be interpreted most strongly against the insurer. They stress the rule that insurance policies are to be liberally construed in favor of the assured and *exceptions and exclusions are to be strictly construed against the insurer.*" Ayres v. Harleysville Mut. Casualty Co., 172 Va. 383, 389, 2 S.E.2d 303, 305 (1939). (Emphasis added.)

It is plain that the exclusion clause used here was drafted in view of the state Workmen's Compensation Acts. See Ayres v. Harleysville Mut. Casualty Co., 172 Va. 383, 394, 2 S.E.2d 303, 308 (1939). In order to prevent double recoveries by an injured employee, once under the compensation statute and once by way of damages against an employer, subparagraph (1) of the clause denies coverage to any "employee" where benefits are "either payable or required to be provided under any workmen's compensation law." In light of the overall purpose of the clause, it is reasonable to infer that the phrase "other employees" appearing in subparagraph (2) refers to employees of the same general type described in subparagraph (1)—persons who normally would be "employees" within the meaning of the workmen's compen-

sation statute but who have been excepted from its operation, such as farm laborers, employees of interstate carriers, workers whose employers hire less than seven persons, and those whose employers choose not to come within the statute. Cf. Va.Code § 65–25 (1958).[1] The design of subparagraph (2) is to assure that these exempted classes shall still be excluded from coverage under the policy, for the underlying purpose of the insurer was to avoid the additional risk involved in the use of the insured automobile by employees in a business operation. Thus, the meaning of "employee" and "employment" in the state workmen's compensation law is pertinent to determine the meaning of these terms in the policy's employee exclusion clause. State Farm Mutual Automobile Ins. Co. v. Braxton, 167 F.2d 283, 284 (4th Cir. 1948) (applying Virginia workmen's compensation definition of "employment" to similar policy exclusion); Lumber Mutual Casualty Ins. Co. of N. Y. v. Stukes, 164 F.2d 571, 574 (4th Cir. 1947) (South Carolina workmen's compensation meaning of "employment" applied to exclusion clause).

■ While the Supreme Court of Appeals of Virginia has adopted a liberal interpretation of "employment" in order to attain the objectives of workmen's compensation legislation,[2] it has nevertheless defined the term as connoting activities which are "permanent or periodically regular." See Board of Supervisors of Amherst County v. Boaz, 176 Va. 126, 131, 10 S.E.2d 498, 500 (1941). The Virginia statute itself specifically excludes mere "casual" employment from its coverage. Va.Code § 65–25 (1958). Thus, before the exclusion clause of the

insurance policy can apply, the insurer must show that the injury occurred in the course of some regularly established employment relationship between the driver of the vehicle and the named insured.

### III

■ The trip on which Pinkard was driving Hanks was of a nature so casual as to fall outside the ordinary understanding of the term "employment" and well outside its meaning in the workmen's compensation statute. Judge Dalton found as a matter of fact that Pinkard was simply doing a favor for an old friend, similar to those previously performed on occasion without pay. The Judge's finding was that neither man understood this to involve a contractual relationship. The $3.00 which appellant characterizes as "wages" were not unreasonably viewed by the court as merely a gift from Hanks to enable Pinkard to occupy his time while waiting for Hanks to complete his errand in Roanoke.[3]

■■ True, as suggested by the insurer, an owner's retention of the right to control the manner in which a car is operated is a factor to be considered in connection with other circumstances in determining whether a master-servant relationship existed. See Ashworth v. Baker, 197 Va. 582, 586, 90 S.E.2d 860 (1956). But Hanks' right to control would have been the same whether or not wages were paid, merely from the fact of ownership. James v. Commonwealth, 178 Va. 28, 35, 16 S.E.2d 296 (1941). It cannot be said that every person who consents to drive another's automobile with the owner as a passen-

---

1. In fact, subparagraph (2) has apparently been inserted in these exclusionary clauses to preclude the argument advanced in several cases that under subparagraph (1) alone, the exclusion would apply only when the injured party is *specifically* eligible for workmen's compensation. Compare Employer's Liability Assurance Corp. v. Owens, 78 So.2d 104 (Fla.1955); Jewtraw v. Hartford Acci-

dent & Indemnity Co., 280 App.Div. 150, 112 N.Y.S.2d 727 (1952).

2. E.g., Phillips v. Brinkley, 194 Va. 62, 72 S.E.2d 339 (1952); Brown v. Fox, 189 Va. 509, 54 S.E.2d 109 (1949).

3. If a true chauffeur hiring arrangement had been envisaged, it is hardly likely that only $3.00 for a round trip of 100 miles would be the measure of compensation.

ger automatically becomes an employee. The word "employee" in the insurance policy cannot be vested with such a broad meaning, absent more certain and compelling language.[4]

We think the Supreme Court of Appeals of Virginia would not deny recovery in this case, where the "employment" was at most a casual incident in the friendship between Hanks and Pinkard, the "wage" appears to have been a mere gratuity, and no employment was shown within the meaning of the term in the workmen's compensation statute, and no problem of double recovery could arise. The decision of the District Court is therefore

Affirmed.

4. In Pennsylvania Casualty Co. v. Elkins, 70 F.Supp. 155 (E.D.Ky.1947), cited by appellant as the leading authority for denying coverage here, the policy clause in broad terms excluded *"any* employee," and there is no indication in the report of the case that the exclusion was pitched on the workmen's compensation coverage. Thus, in denying coverage under the policy, the District Court in that case took no account of the applicable Workmen's Compensation Act's meaning of "employment." As we have shown, however, this type of inquiry is peculiarly relevant in interpreting employee exclusion clauses keyed to the compensation statutes. See State Farm Mutual Automobile Ins. Co. v. Braxton, 167 F.2d 283 (4th Cir. 1948); Lumber Mutual Casualty Ins. Co. of N. Y. v. Stukes, 164 F.2d 571 (4th Cir. 1947).