Charles K. BROWN, Administrator of the Estate of Jose Garcia; Maria Puente Salanda, Individually; Maria Puente Salanda, as Next Friend of Ruben Villicana Puente; Maria Puente Salanda, as Next Friend of Maria Consuelo Villicana; and Maria Puente Salanda, as Next Friend of Jesus Villicana Puente Appellants,

v.

INDIANA INSURANCE COMPANY; Darren Akers; Shelby and Finch Garden, LLC, D/B/A Willowbank Garden Company; Matt Zehnder; CSX Transportation; and Wendy O'Banion, as Administratrix of the Estate of Chase O'Banion Appellees.

Shelby and Finch Garden, LLC, D/B/A Willowbank Garden Company; Matt Zehnder; and Darren Akers Appellants,

v.

Indiana Insurance Company; Wendy O'Banion, as Administratrix of the Estate of Chase O'Banion; CSX Transportation; Charles K. Brown, Administrator of the Estate of Jose Garcia; Maria Puente Salanda, Individually; Maria Puente Salanda, as Next Friend of Ruben Villicana Puente; Maria Puente Salanda, as Next Friend of Maria Consuelo Villicana; and Maria Puente Salanda, as Next Friend of Jesus Villicana Puente Appellees.

CSX Transportation, Inc. Appellant,

v.

Indiana Insurance Company Appellee.

Wendy O'Banion, as Administratrix of the Estate of Chase O'Banion Appellant,

v.

Indiana Insurance Company; Charles Brown, Administrator of the Estate of Jose Garcia; Maria Puente Saldana, Individually; Maria Puente Saldana, Next Friend of Ruben Villicana Puente; Maria Puente Saldana, Next Friend of Maria Consuelo Villicana; Maria Puenta Saldana, Next Friend of Jesus Villicana Puente; Shelby & Finch Garden Company D/B/A Willowbank Garden Company; Matthew Zehnder; CSX Transportation; and Darren Akers Appellees.

No. 2004–SC–0065–DG, 2004–SC–0067–DG, 2004–SC–0070–DG, 2004–SC–0071–DG.

Supreme Court of Kentucky.

Dec. 22, 2005.

Rehearing Denied March 23, 2006.

C. Lewis Mathis, Jr., Nathan Riggs, Shelbyville, Counsel for Appellants Charles K. Brown, Administrator of the Estate of Jose Garcia; Maria Puente Salanda, Individually; Maria Puente Salanda, as Next Friend of Ruben Villicana Puente; Maria Puente Salanda, as Next Friend of Maria Consuelo Villicana; and Maria Puente Salanda, as Next Friend of Jesus Villicana Puente (2004–SC–0065–DG).

Allan Weiss, Ferreri & Fogle, Louisville, Counsel for Appellee Indiana Insurance Company (2004–SC–0065–DG, 2004–SC–0067–DG, 2004–SC–0070–DG and 2004–SC–0071–DG).

Donald L. Miller, II, Christopher M. Mussler, Frost, Brown, Todd, LLC, Louisville, Counsel for Appellee Darren Akers (2004–SC–0065–DG and 2004–SC–0071–DG).

Mark S. Fenzel, David J. Kellerman, Middleton & Reutlinger, Louisville, C. Gilmore Dutton, III, Shelbyville, Counsel for Appellees Shelby and Finch Garden, LLC, D/B/A Willowbank Garden Company; and Matt Zehnder (2004–SC–0065–DG).

David R. Monohan, J.T. Blaine Lewis, Woodward, Hobson & Fulton, Louisville, Counsel for CSX Transportation (2004–SC–0065–DG, 2004–SC–0067–DG, 2004–SC–0070–DG and 2004–SC–0071–DG).

Glenn Alan Cohen, Paul Joseph Hershberg, Louisville, Counsel for Appellee Wendy O'Banion, as Administratrix of the Estate of Chase O'Banion (2004–SC–0065–DG and 2004–SC–0067–DG).

Glenn Alan Cohen, Carl D. Frederick, Paul Joseph Hershberg, Louisville, Counsel for Appellant Wendy O'Banion, as Administratrix of the Estate of Chase O'Banion (2004–SC–0071–DG).

C. Gilmore Dutton, III, John C. Robinson, Shelbyville, Counsel for Appellants Shelby and Finch Garden, LLC, D/B/A Willowbank Garden Company; Matt Zehnder; and Darren Akers (2004–SC–0067–DG).

Nathan Riggs, Shelbyville, Counsel for Appellee Charles K. Brown, Administrator of the Estate of Jose Garcia (2004–SC–0067–DG).

C. Lewis Mathis, Jr., T. Sherman Riggs, Shelbyville, Counsel for Appellee Charles

Brown, Administrator of the Estate of Jose Garcia; Maria Puente Saldana, Individually; Maria Puenta Saldana, Next Friend of Ruben Villicana Puente; Maria Puenta Saldana, Next Friend of Maria Consuelo Villicana; and Maria Puenta Saldana, Next Friend of Jesus Villicana Puente (2004–SC–0071–DG).

C. Gilmore Dutton, III, Benjamin M. Salyers, Shelbyville, Counsel for Appellees Shelby & Finch Garden Company D/B/A Willowbank Garden Company; and Matthew Zehnder (2004–SC–0071–DG).

COOPER, Justice.

The issue presented by this appeal is whether a commercial automobile liability insurance policy affords coverage for damages sought in a tort action brought against the insured employer for the wrongful death of its employee, where the action would have been barred by the exclusive remedy provision of the Kentucky Workers' Compensation Act but for the fact that the employer failed to procure a policy of workers' compensation insurance. We hold that the automobile liability policy neither affords coverage for such an action nor requires the insurer to pay the cost of defending such an action.

On June 19, 2001, Jose Garcia and Chase O'Banion were killed when the pickup truck in which they were passengers collided with a CSX railroad train. The pickup truck was owned by Shelby and Finch Garden, LLC, d/b/a Willowbank Garden Company ("Willowbank"), a landscaping business, and was being driven at the time of the collision by Darren Akers, an employee of Willowbank. Garcia and O'Banion were also employees of Willowbank, and all three were in the course and scope of their employment when the accident occurred. Ordinarily, under KRS 342.690(1), the exclusive remedy available to the estates of Garcia and O'Banion

would be death benefits payable under KRS 342.750 of the Workers' Compensation Act. However, Willowbank, despite the mandatory provisions of that Act, KRS 342.630(1), had failed either to purchase a policy of workers' compensation insurance or to qualify as a self-insurer as required by KRS 342.340(1). Under that circumstance, KRS 342.690(2) also authorizes an injured employee to bring an action against the employer in tort. Thus, the estates of Garcia and O'Banion brought this wrongful death action in the Shelby Circuit Court seeking damages against Willowbank and Akers (and CSX).

Willowbank was the named insured of a policy of commercial automobile insurance issued by Indiana Insurance Company that provided liability coverage for the pickup truck operated by Akers at the time of this accident. Akers was an additional insured under the "permissive user" clause of the policy. Claiming that the policy covers the tort claims asserted by the estates of Garcia and O'Banion, Willowbank and Akers demanded that Indiana Insurance defend them against the tort actions and pay any damages recovered against them by the estates. Indiana Insurance intervened in the tort action and petitioned for a declaration of rights on the coverage question. The Shelby Circuit Court entered summary judgment in favor of Willowbank and Akers on the coverage issue. The Court of Appeals reversed with directions to enter a summary judgment in favor of Indiana Insurance. We granted discretionary review and now affirm the decision of the Court of Appeals.

Like all commercial automobile liability and comprehensive general liability (CGL) policies (except a so-called "Stop Gap" policy, which Willowbank also could have purchased but did not), the Indiana Insurance policy at issue here specifically excludes coverage for injuries falling within the pur-

view of the Workers' Compensation Act. Such exclusions are "intended to be compatible with the requirements of the Workers' Compensation Act, and to prevent the payment of double premiums and the need for unnecessary coverage by insurers." *Canal Ins. Co. v. Nix*, 7 P.3d 1038, 1040 (Colo.Ct.App.1999). *See also United Servs. Auto. Ass'n v. Pinkard*, 356 F.2d 35, 37 (4th Cir.1966) (construing Virginia law) ("It is plain that the exclusion clause used here was drafted in view of the state Workmen's Compensation Acts."). Willowbank asserts that such exclusions do not apply to injuries falling within the purview of the Workers' Compensation Act when an irresponsible employer[1] fails to procure a policy of workers' compensation insurance. If so, then, *ipso facto,* every commercial automobile liability and CGL policy issued in Kentucky (but only in Kentucky) would be deemed to provide potential workers' compensation coverage as well as automobile and general liability coverage. It is a fact of life and good business practice in the insurance industry that increased coverage requires increased premiums. The potential impact of such a holding on insurance premiums paid by responsible business employers in Kentucky would be, to say the least, ominous. Since all other jurisdictions that have considered the issue have reached the opposite conclusion, the concomitant increased cost of doing business in Kentucky would also place responsible Kentucky businesses at a competitive disadvantage.

## I. WORKERS' COMPENSATION ACT.

█ KRS 342.690(1) provides that "[i]f an employer secures payment of compensation," *i.e.,* procures a policy of workers'

compensation insurance, its liability and the liability of its employees for the unintentional injury or death of an employee is limited to the remedies provided by the Workers' Compensation Act. KRS 342.690(2), however, provides:

> If an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, *may claim compensation under this chapter and in addition may maintain an action at law* or in admiralty for damages on account of such injury or death, provided that the amount of compensation shall be credited against the amount received in such action, and provided that, if the amount of compensation is larger than the amount of damages received, the amount of damages less the employee's legal fees and expenses shall be credited against the amount of compensation. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, that the employee assumed the risks of his employment, or that the injury was due to the contributory negligence of the employee.

(Emphasis added.)

█ The statute is clear: the estates of Garcia and O'Banion retain the right to make a "claim for compensation under this chapter" even though Willowbank has no workers' compensation insurance. If they exercise that right, death benefits will be paid to them by the uninsured employer's fund, which is granted a statutory subrogation right against the uninsured employer (Willowbank). KRS 342.760(4). In addition, KRS 342.690(2) authorizes the estates to sue for tort dam-

---

1. Willowbank also chose not to take the required standard deductions from its employees' paychecks—though making no claim that the employees were, somehow, independent contractors.

ages in circuit court, subject to an offset for any workers' compensation benefits received. Absent that statutory authorization, this tort action against Willowbank and Akers would be absolutely precluded by KRS 342.690(1). In the event a tort action is brought, the employer is deprived not only of the "exclusive remedy" defense provided by KRS 342.690(1), but also of the common law defenses of the "fellow servant doctrine"[2] and contributory fault. (Our predecessor court abolished the assumption of risk defense in *Parker v. Redden*, 421 S.W.2d 586 (Ky. 1967).) Whether the estates of Garcia and O'Banion have filed workers' compensation claims for death benefits is both unknown and immaterial. As will be seen, it is only material that they were entitled to such benefits and that Willowbank was subject to ultimate liability for any benefits paid or payable.

## II. APPLICABLE POLICY PROVISIONS.

The pertinent provisions of Willowbank's Indiana Insurance policy are as follows:

**SECTION II LIABILITY COVERAGE**

### A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" ... to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

. . . .

We have the right and duty to defend any "insured" against a "suit" seeking such damages .... However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" ... to which this insurance does not apply.

### 1. WHO IS AN INSURED

The following are "insureds":

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow ....

. . . .

### B. Exclusions

This insurance does not apply to any of the following:

. . . .

### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer *may be held liable under any workers' compensation*, disability benefits or unemployment compensation law or any similar *law.*

### 4. Employee Indemnification and Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business ....

. . . .

This exclusion applies:

---

2. "A master is not liable to a servant or subservant who, while acting within the scope of his employment or in connection therewith, is injured solely by the negligence of a fellow servant in the performance of acts not involving a violation of the master's non-delegable duties, unless the servant was coerced or deceived into serving, was too young to appreciate the risks, or was employed in violation of statute."

*Ruble v. Stone*, 430 S.W.2d 140, 143 (Ky. 1968) (quoting Restatement (Second) Agency § 474 (1957)).

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to *domestic "employees" not entitled to workers' compensation benefits* . . . .

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

. . . .

## SECTION V DEFINITIONS

. . . .

E. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

. . . .

H. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

. . . .

N. "Temporary worker" means a person who is *furnished to you* for a finite time period to support or supplement your workforce in special work situations such as "employee" absences, temporary skill shortages and seasonal workloads.

. . . .

(Emphasis added.)

Under these policy provisions, the policy provides coverage and the obligation to defend both Willowbank and Akers unless coverage is excluded by one or more of the enumerated exclusions.

## III. EXCLUSION 3—"WORKERS' COMPENSATION."

Willowbank asserts that Exclusion 3 does not apply because the estates of Garcia and O'Banion seek tort damages, not workers' compensation benefits. However, the exclusion specifically applies to any obligation for which the insured *"may* be held liable under any workers' compensation . . . law." As previously noted, under KRS 342.690(2) the estates of Garcia and O'Banion "may claim compensation" for death benefits under the Workers' Compensation Act *in addition to* filing an action in circuit court. If the estates exercise their option to claim death benefits under the Workers' Compensation Act, Willowbank ultimately will be liable for any benefits paid. Thus, the basis for this action in tort (the work-related deaths of Garcia and O'Banion) is an "obligation for which the 'insured[ ]' [Willowbank] may be held liable under any workers' compensation . . . law," *i.e.,* KRS 342.750, for workers' compensation benefits. Moreover, neither Willowbank nor Akers would be subject to any tort liability but for the authorization contained in KRS 342.690(2); *ergo,* both Willowbank and Akers "may be held liable under any workers' compensation . . . law," *i.e.,* KRS 342.690(2), for tort damages. Finally, because Akers was a "fellow servant" of Garcia and O'Banion, the circuit court action could not be maintained against Willowbank except for the fact that KRS 342.690(2) renders that defense unavailable to an employer who has failed to procure a policy of workers' compensation insurance. Exclusion 3 applies under all three scenarios.

Every jurisdiction that has considered this issue has held that a "workers' com-

pensation" exclusion in a policy of commercial automobile or CGL insurance, such as Exclusion 3 in this Indiana Insurance policy, precludes coverage when the insured employer is exposed to tort liability solely because of its failure to procure a policy of workers' compensation insurance. In *Johnson v. Marciniak,* 231 F.Supp.2d 958 (D.N.D.2002), the court specifically rejected the argument asserted by Willowbank that the "workers' compensation" exclusion in the insured's CGL policy did not apply because the tort action did not seek workers' compensation benefits.

> Johnson [employee] suggests the simple answer, here, is that he did not receive any workers compensation benefits. However, Grinnell [CGL insurer] counters that the policy excludes "obligations" under a workers compensation law. Dave's [employer] had the obligation to procure workers compensation coverage, and as a non-complying employer Dave's exposed itself to a civil action by Johnson for personal injury. The workers compensation clause precludes coverage for liability derived from an obligation which should have been handled by a workers compensation claim.
>
> . . . .
>
> . . . Dave's should not be rewarded for failure to obey workers compensation law. Johnson's cause of action against Dave's was made possible only because of the failure to obtain workers compensation insurance. The policy clearly excluded obligations under workers compensation; if Dave's would have obtained workers compensation this claim would be barred.

*Id.* at 959–60 (construing North Dakota law). *See also Nix,* 7 P.3d at 1040 (auto policy); *Weger v. United Fire & Cas. Co.,* 796 P.2d 72, 74 (Colo.Ct.App.1990) (CGL policy); *Fla. Ins. Guar. Ass'n, Inc. v. Re-*

*voredo,* 698 So.2d 890, 893 (Fla.Dist.Ct. App.1997) (CGL policy); *W. Farm Bureau Mut. Ins. Co. v. Barela,* 79 N.M. 149, 441 P.2d 47 (1968); *Canal Ins. Co. v. Abraham,* 598 N.W.2d 512, 517–18 (S.D.1999) (auto policy—exclusion applicable even though employer had elected not to be covered under workers' compensation act); *Tri–State Constr., Inc. v. Columbia Cas. Co./CNA,* 39 Wash.App. 309, 692 P.2d 899, 903 (1984) (upholding exclusion in CGL policy under Oregon law: "Where an employer has failed to comply with the workers' compensation statute, liability in actions for damages expressly permitted by Oregon's workers' compensation statute in that situation is an 'obligation for which the insured . . . may be held liable under [the] workmen's compensation' law.").

## IV. EXCLUSION 4—"EMPLOYEE."

Exclusion 4 is not limited to injuries for which workers' compensation benefits are sought or payable, but applies to any injury to any employee of the insured (except a domestic employee or temporary worker) arising out of and in the course of employment by the insured, or the performance of duties related to the conduct of the insured's business. *See Employers' Liab. Assur. Corp. v. Owens,* 78 So.2d 104, 105–06 (Fla.1955). This exclusion applies even if, *e.g.,* the employee rejected coverage under the Workers' Compensation Act, KRS 342.395(1); the employee forfeited compensation benefits by failing to give timely notice of the accident, KRS 342.185(1), or by failing to timely file the claim, KRS 342.270(1); or the employee simply chose not to pursue benefits under the Act, *State Farm Mut. Auto. Ins. Co. v. Rice,* 205 Tenn. 344, 326 S.W.2d 490, 492 (1959) ("[I]n no event can the plain language of this exclusion be changed by the failure of Rice to avail himself of the provisions of the compensation act.").

Our courts have long upheld automobile liability insurance exclusions for injuries to the insured's employees sustained while in the course and scope of employment, *Craddock v. Imperial Cas. & Indem. Co.*, 451 S.W.2d 658, 661 (Ky.1970); *Commonwealth, Dept. of Pub. Safety v. Robinson*, 435 S.W.2d 447, 448 (Ky.1968), even in response to arguments that the exclusion violated the financial responsibility law. *Nat'l Union Indem. Co. v. Miniard*, 310 S.W.2d 793, 794 (Ky.1958).

> To find otherwise would encourage employers to ignore their obligation to obtain workers' compensation insurance and rely on their general liability policy, which in turn necessarily would require a higher premium schedule reflecting the additional risk. Such a result would create an imbalance in procurement of insurance and compound confusion and enforceability of the comprehensive and basic social policy enunciated by the Act. This decision does not preclude appellants from seeking damages directly from the employer-intervenors *and places the risk and payment for damages where it belongs.*

*Inman v. Nationwide Mut. Ins. Co.*, 433 Pa.Super. 534, 641 A.2d 329, 331 (1994) (emphasis added) (CGL policy). *See also Nix*, 7 P.3d at 1040 (auto policy); *Revoredo*, 698 So.2d at 891 (CGL policy); *State Farm Mut. Auto. Ins. Co. v. Roe*, 226 Mich.App. 258, 573 N.W.2d 628, 632 n. 2 (1997) (auto policy) ("To find coverage under plaintiff's [employer's] automobile policy for the injuries sustained by [employee] would provide an incentive for other employers not to comply with their statutorily mandated obligation to carry worker's compensation insurance ....").

## V. EXCLUSION 5—"FELLOW EMPLOYEE."

Exclusion 5 excludes coverage otherwise provided for Akers by the "permissive user" clause. Akers clearly would have been immune from tort liability under KRS 342.690(1) if Willowbank had purchased a policy of workers' compensation insurance.[3] *Jackson v. Hutchinson*, 453 S.W.2d 269, 270 (Ky.1970); *George Petro. Inc. v. Bailey*, 438 S.W.2d 88, 90 (Ky.1968); *Miller v. Scott*, 339 S.W.2d 941, 944 (Ky. 1960). Although KRS 342.690(2) punishes Willowbank for its failure to provide workers' compensation insurance by denying it the right to assert the common-law "fellow servant" defense in this tort action, it does not purport to punish Indiana Insurance, an innocent party, by denying it the right to assert the "fellow employee" exclusion in its tort liability policy. *Nix*, 7 P.3d at 1040 (upholding "fellow employee" exclusion in employer's commercial automobile liability policy even though Colo.Rev.Stat. §§ 8–41–101(1)(b) & 8–41–102 precluded employer who failed to obtain workers' compensation insurance from asserting "fellow servant" defense in tort action); *Abraham*, 598 N.W.2d at 518 (upholding "fellow employee" exclusion in automobile liability policy where employer elected not to be covered under worker's compensation act). For a plethora of cases upholding the validity of the "fellow-employee" exclusion in automobile liability insurance

---

**3.** We find no cases addressing whether the employer's failure to purchase workers' compensation insurance strips its employee of the fellow-employee immunity granted by KRS 342.690(1). Since the employee is not responsible for purchasing workers' compensation insurance, it seems inherently unfair that KRS 342.690(2) also exposes the fellow-employee of the injured worker to tort liability. Perhaps the employee's recourse is an action for indemnity against the employer. *See Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780–81 (Ky.2000). Neither issue has been raised or briefed in this appeal; thus, their resolution must await another case.

policies, see Job A. Sandoval, *Construction and Application of Provision of Automobile Liability Policy Expressly Excluding from Coverage Liability Arising from Actions Between Fellow Employees*, 45 A.L.R.3d 288 § 5[a] (1972, supplemented through 2004) (citing cases from twenty-nine jurisdictions holding the exclusion valid).

## VI. "TEMPORARY WORKER" EXCEPTION.

Willowbank asserts that Exclusions 4 ("employee") and 5 ("fellow employee") do not apply here because Garcia and O'Banion were "temporary workers," as defined in Section V of the policy, thus not within the definition of "employee." This assertion ignores both the plain language of the "temporary worker" exception and its purpose. The purpose of such policy exclusions and exceptions can be ascertained by reference to corresponding provisions of the Workers' Compensation Act, because "it [is] apparent that the exclusion was crafted in consideration of worker's compensation law." *Roe*, 573 N.W.2d at 632.

> [C]onstruing the exclusionary language in accordance with worker's compensation case law supports the policy considerations underlying the worker's compensation act. Generally, the right to recover benefits for personal injury or occupational disease under the worker's compensation act is the exclusive remedy of an employee against an employer who has complied with the act. If an employer fails to comply with the insurance requirements of the worker's compensation act, ... it is liable in tort for injuries to its employees. *Here, the exclusion in the insurance policy sought to prevent plaintiff [insurer] from becoming a worker's compensation insurer and limit plaintiff's liability to only those risks properly assumed by an automobile insurer.*

*Id.* (emphasis added) (citations omitted). *See also Pinkard*, 356 F.2d at 37. In other words, automobile and CGL insurers exclude from their policies those risks that are supposed to be covered by their insured's workers' compensation insurance policies so as to avoid both double coverage and double premiums. *Nix*, 7 P.3d at 1040.

The reason the "employee" exclusions apply to leased workers but not to temporary workers "furnished to you" is that the lessee of a leased employee is required to provide workers' compensation insurance coverage for that employee, whereas a temporary worker remains the employee of the temporary help service that furnished the worker. Specifically, KRS 342.615 provides:

**342.615. Registration of employee leasing companies—Coverage requirements for lessees—Status of temporary help service.**

> (1) As used in this section:
>
> (a) "Employee leasing company" or "lessor" means an entity that grants a written lease to a lessee pursuant to an employee leasing arrangement.
>
> (b) "Lessee" means an employer that obtains all or part of its workforce from another entity through an employee leasing arrangement.
>
> (c) "Leased employee" means a person performing services for a lessee under an employee leasing arrangement.
>
> . . . .
>
> (e) "Temporary worker" means a worker *who is furnished to* an entity to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions for a finite period of time.
>
> . . . .

(4) A lessee shall fulfill its statutory responsibility to secure benefits for leased employees under this chapter by purchasing and maintaining a standard. workers' compensation policy approved by the commissioner of the Department of Insurance. A lessee may fulfill that responsibility by contracting with an employee leasing company to purchase and maintain the required insurance policy. In either event, it shall be the responsibility of the lessee to maintain in its files at all times the certificate of insurance, or a copy thereof, evidencing the existence of the required insurance. *The exposure and experience of the lessee shall be used in determining the premium for the policy and shall include coverage for all leased employees.* (5) *A temporary help service shall be deemed the employer of a temporary worker and shall be subject to the provisions of this chapter.*

(Emphasis added.)

 It is no coincidence that the definition of "temporary worker" in the Indiana Insurance automobile policy mirrors the definition of "temporary worker" in KRS 342.615(1)(e). The statute explains why injuries to temporary workers are not included within the "employee" exclusion from the liability coverage of the automobile (or CGL) policy. For insurance purposes, the temporary worker remains the employee of the temporary help service that "furnished" the worker (rather than becoming an employee of the entity to which that worker is furnished). Thus, the temporary worker is covered under the temporary help service's workers' compensation insurance, not that of the entity to which the worker is furnished. Since the temporary worker is not the employee of the entity to which he or she is furnished, that entity's automobile and CGL policies except the temporary worker from the def-

inition of "employee." However, for that exception to apply, the worker must have been "furnished to" the entity by a temporary help service, thereby assuring that the temporary worker is covered by the workers' compensation insurance of the temporary help service. If the worker is not "furnished to" the entity by a temporary help service, that worker is simply the employee of that entity, and that worker is insured under that entity's workers' compensation insurance and excluded from coverage under its automobile and CGL policies.

Neither Garcia nor O'Banion was "furnished to" Willowbank by a temporary help service, and both therefore fall within the "employee" exclusions of Indiana Insurance's automobile policy. Matthew Zehnder, one of the three owners of Willowbank, testified that he hired Garcia on the recommendation of a tobacco farmer and that he hired O'Banion at the request of O'Banion's parents. Thus, neither was a "temporary worker" as those terms are defined in both the insurance policy and the Workers' Compensation Act. Willowbank argues that Garcia and O'Banion were "temporary workers" because Garcia was a migrant worker and O'Banion intended to quit work and attend college that fall. Willowbank would simply delete the "furnished to you" requirement from the definition as "ambiguous," citing *Ayers v. C & D Gen. Contractors,* 237 F.Supp.2d 764 (W.D.Ky.2002). Indeed, the court in *Ayers* did profess to be unable to explain or find the logic for the "furnished to you" clause:

> Defendant focuses on two words within this definition and contends that Ayers must have been "furnished to" C & D to qualify for "temporary worker" status. Under this reading, however, short-term employees that respond to a newspaper advertisement are excluded from cover-

age, whereas short-term employees supplied by a temporary agency receive coverage. Such a literal interpretation ultimately changes the basic meaning of the contract by including some temporary employees and excluding others based on a seemingly illogical or, at the least, *unexplainable* distinction. The Court has struggled unsuccessfully to *find the logic* in such a distinction. Moreover, neither party has been able to provide any argument in favor of giving the phrase "furnished to you" the undue weight Defendant urges.

*Ayers,* 237 F.Supp.2d at 769 (emphasis added).

The reason the court in *Ayers* found the distinction between temporary workers and other employees "unexplainable" and could not "find the logic" in the distinction was, no doubt, because it was not addressing the issue in the context of an action authorized by the Kentucky Workers' Compensation Act. *Ayers* was an action brought pursuant to the Admiralty Extension Act, 33 U.S.C. § 905(b), a provision of the Longshore and Harbor Workers' Compensation Act that allows a maritime worker to recover both Longshore and Harbor Workers' compensation and damages at law if the injury was caused by the negligence of a vessel. 237 F.Supp.2d at 767 n. 3. The Longshore and Harbor Workers' Compensation Act draws no distinction between a "temporary worker" and any other employee. 33 U.S.C. § 902(3). The court in *Ayers* had no reason to look to the Kentucky Workers' Compensation Act to ascertain the explanation for or logic behind the distinction.

However, courts that have construed the "temporary worker" exception in a state workers' compensation context have had no difficulty explaining or finding the logic in the "furnished to" requirement. Missouri has a workers' compensation statute,

Mo. Rev. St. § 287.282.3, as supplemented by a regulation, Mo.Code Regs. Ann. tit. 20 § 500–6.800(1)(A) & (B), that, similar to KRS 342.615, distinguishes between "employee leasing arrangements" and "temporary help service arrangements which assign their employees to clients for a finite period of time to support or supplement the client's work force in special work situations, such as employee absences, temporary skill shortages and seasonal workloads . . . ." In construing the "temporary worker" exception to the employee exclusion in a CGL policy, the Missouri Court of Appeals found that the "furnished to" clause in the policy definition of "temporary worker" correlated with the statutory definition of "temporary help service." *Am. Family Mut. Ins. Co. v. Tickle,* 99 S.W.3d 25, 30–31 (Mo.Ct.App.2003). Thus construed, the court found no ambiguity in the "furnished to" language of the exception. *Id.* at 31.

Even absent a workers' compensation statute similar to KRS 342.615, the Appellate Court of Connecticut had no difficulty understanding the meaning of the standard "furnished to" language contained in a CGL policy definition of "temporary worker."

> [W]e conclude that the temporary worker language is clear and unambiguous. Under the terms contained in the four corners of the subject insurance contract, a temporary worker is a person who must be "furnished" to the insured to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions. . . .

> A plain reading of the relevant provisions of the insurance policy and an examination of the facts lead to the conclusion that Shaw was not a temporary worker as defined by the policy, because he was not "furnished" to Allen. The court found that Allen did not go to an

employment agency, manpower service provider or any similar service to employ or to utilize Shaw's services. Shaw was not employed by anyone who lent or furnished him to Allen as an employee. Thus, the court reasonably concluded that Shaw was not furnished to Allen within the definition of "temporary worker" and could not be a temporary worker under the insurance policy.

*Nationwide Mut. Ins. Co. v. Allen,* 83 Conn.App. 526, 850 A.2d 1047, 1057 (2004).

## VII. REASONABLE EXPECTATIONS.

 Finally, Willowbank seeks coverage under the "doctrine of reasonable expectations." That principle pertains to alleged ambiguities within the policy.

> The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.
>
> . . . .
>
> The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured.

*Simon v. Cont'l Ins. Co.,* 724 S.W.2d 210, 212–13 (Ky.1986) (quoting R.H. Long, The Law of Liability Insurance § 5.10B).

 However, there is no ambiguity in the Indiana Insurance policy's workers' compensation exclusions, especially when viewed in conjunction with the Workers' Compensation Act, with which they are compatible. *Nix,* 7 P.3d at 1040; *see also Pinkard,* 356 F.2d at 37. "Ambiguity (as opposed to outright lack of understanding) is created only by converting an insured's

hope or assumption that every out-of-pocket payment is covered into a part of the contract language." *Patrons Oxford Mut. Ins. Co. v. Marois,* 573 A.2d 16, 19 (Me. 1990). Furthermore, no reasonable and responsible business owner would expect a commercial automobile or CGL insurance policy to serve as a substitute for workers' compensation insurance.

> An employer obtains a liability policy to cover *its liability to the public* for negligence of its agents, servants and employees under the doctrine of respondeat superior. This is because compliance with the provisions of the Workers' Compensation Act constitutes the full extent of an employer's liability for any injuries sustained by its employees, direct or statutory, arising out of and in the course of their employment. The intent of commercial general liability policies is to protect against the unpredictable and potentially unlimited liability that can result from accidents causing injury to other persons or their property. A commercial general liability policy does not cover the insured's obligations under a workers' compensation policy or bodily injury to the insured's employees arising out of the employment. The primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public.

*Tickle,* 99 S.W.3d at 29 (internal citations and quotations omitted).

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be uti-

lized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

*St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 226–27 (Ky.1994).

We decline to rewrite this policy of insurance so as to shift the consequences of Willowbank's irresponsible failure to obtain workers' compensation insurance onto Kentucky's responsible business owners in the form of increased automobile and CGL insurance premiums for duplicative workers' compensation insurance coverage. Instead, those consequences remain where they properly belong, *Inman*, 641 A.2d at 331, *i.e.*, on Willowbank, the party that could have avoided them by complying with its statutory duty to purchase workers' compensation insurance coverage.

Accordingly, the opinion of the Court of Appeals is affirmed.

GRAVES, JOHNSTONE, ROACH, and SCOTT, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the suit filed was an action at law and not a claim under workers' compensation. The Court of Appeals erroneously enforced the policy exclusions and that decision should be reversed.

Kentucky has long had the public policy of construing insurance contracts strictly so as to make the insurance effective. Our case law has also supported the principle of contract construction that insurance policies must be construed so as to benefit the party who did not prepare the contract. Generally, insurance policies are contracts

of adhesion. Kentucky has adopted four basic principles of insurance policy construction. *See Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855 (Ky.1992). They are as follows: 1) all exclusions are to be narrowly interpreted and all questions resolved in favor of the insured; 2) exceptions and exclusions are to be strictly construed so as to render the insurance effective; 3) any doubt as to the terms of the policy should be resolved in favor of the insured; and, 4) because the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language employed.

The workers' compensation exclusion does not apply because workers' compensation was neither the exclusive remedy nor the remedy sought by these claimants. Section III, Paragraphs B3, B4 and B5 of the policy provide in relevant parts as follows:

This insurance does not apply to any of the following:

. . . .

3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits, or unemployment compensation law or any similar law.

4. Employee Indemnification and Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the insured's business; . . .

5. Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

A careful review of this matter demonstrates that the Court of Appeals erred in enforcing the policy exclusions because the suit filed was as an action at law and not a claim under workers' compensation. The employer here did not have workers' compensation coverage. That being the case, O'Banion and Garcia could proceed under the Act or maintain an action at common law. KRS 342.690(2). They did the latter and the policy exclusions cited above have no application here. If the insurance company intended to exclude responsibility for such damages, it was required to include the language in the contract of insurance.

As correctly noted by the Court of Appeals, the question of coverage under the contract ultimately turns on the policy definition of the term "employee." Pursuant to the policy, employees of the insured are excluded from coverage. A "leased worker" is specifically included within the definition of "employee" although a "temporary worker" is specifically excluded. The relevant terms were defined in the policy as follows:

H. 'Leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker.'

. . . .

N. 'Temporary worker' means a person who is furnished to you for a finite time period to support or supplement your workforce in special work situations such as 'employee' absences, temporary skill shortages and seasonal workloads.

O'Banion was a "temporary worker" as that term is defined in the insurance policy. He was working for Willowbank for the summer before attending college in the fall. O'Banion was working for a "finite time period" and was hired temporarily to assist with "seasonal workloads." Consequently, the employee exclusion does not apply to him and he is covered under the policy.

Garcia was also a "temporary worker" under the policy. He was a migrant laborer who worked primarily in the summers. Garcia would show up sporadically and would be permitted to work if it was available. He was not on the regular payroll and his employer did not consider him an employee. Accordingly, Garcia was entitled to coverage as a "temporary worker."

The Court of Appeals erred in using the definitions set out in the Workers' Compensation Act. KRS 342.615 defines both "temporary worker" and "temporary help service" for workers' compensation. Neither of those definitions applies here. As it was already observed, this is a common law action, not a workers' compensation case.

Moreover, the insurance contract does not incorporate Kentucky's workers' compensation statute by reference. Generally, Kentucky courts require that an insurance policy expressly and clearly incorporate any extrinsic document, statutory or otherwise. *See Twin City Fire Ins. Co. v. Terry,* 472 S.W.2d 248 (Ky.1971). That was not done in this case, and reliance on the definitions in the Act is improper.

Indiana Insurance focuses on three words, "furnished to you", contained within the definition of "temporary worker" and contend that O'Banion and Garcia must have been "furnished to [Willowbank]" to qualify for "temporary worker" status. As was correctly determined by Chief Judge

Heyburn in a similar case, this phrase is ambiguous. *Ayers v. C & D General Contractors,* 237 F.Supp.2d 764 (W.D.Ky.2002). That ambiguity is highlighted by the inconsistencies between the definitions of "temporary worker" and "leased worker" in the policy. In defining "leased worker" the policy clearly states that the person must be leased from "a labor leasing firm." However, when defining "temporary worker", the policy does not state from whom that "temporary worker" must be furnished. The phrase "furnished to you" is insufficient to convey all the meaning that indiana insurance now wishes to use.

The Court of Appeals erroneously adopted the reasoning of the Missouri Court of Appeals in *American Family Mut. Ins. Co. v. Tickle,* 99 S.W.3d 25 (Mo. Ct.App.2003), rather than the decision in *Ayers, supra,* which applied Kentucky law. In order to give meaning to the phrase "furnished to you", *Tickle, supra,* embarks on an extremely confusing analysis which dissects sentences and analyzes grammar. Undergoing this type of sentence structure analysis in order to determine the meaning of the contract certainly indicates the ambiguity that exists.

Moreover, the Court of Appeals and the majority failed to recognize that Kentucky and Missouri have different policies on the doctrine of incorporation by reference. Missouri courts routinely turn to the workers' compensation statute to define the term "employee." *See Tickle,* 99 S.W.3d at 29. As it was previously observed in this dissenting opinion, Kentucky courts require that an insurance policy expressly and clearly incorporate any extrinsic document, statutory or otherwise. *See Terry, supra.* The policy here does not incorporate the definitions from the Workers' Compensation Act.

Pursuant to the doctrine of "reasonable expectations" an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy. *Woodson v. Manhattan Life Ins. Co. of New York, N.Y.,* 743 S.W.2d 835 (Ky.1987). A court charged with the responsibility of interpreting a policy of insurance is to determine and carry out the original intentions of the parties. *Wilcox v. Wilcox,* 406 S.W.2d 152 (Ky.1966). It is also to interpret the terms used in the light of the usage and understanding of an average person. *Fryman v. Pilot Life Ins. Co.,* 704 S.W.2d 205 (Ky.1986). Unless the terms contained in an insurance policy contain a technical meaning in the law, they must be interpreted according to the usage of the average man and as they would be read and understood by him in light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured. *Fryman, supra.*

In this case, it was entirely reasonable for Zehnder to expect that Garcia and O'Banion were both temporary workers and that both would be covered under his policy. An affidavit presented by the insurance company to the contrary is unconvincing. The reasonable expectations of an expert in the field would naturally differ from that of an average man. Indiana Insurance failed to provide a clear, unequivocally conspicuous and plain manifestation of the company's intent to exclude coverage. Coverage is reasonably expected.

Indiana Insurance is obligated to indemnify and defend its named insured, Willowbank, and its additional insured, Akers. Clearly, the fellow employee exclusion does not apply to Willowbank. Nor does the employer indemnification exclusion relieve the insurance company of its duty because O'Banion and Garcia were not "employees" under the policy. Finally, the workers' compensation exclusion does not

apply because this was a common law action.

Akers is also entitled to be indemnified and defended by Indiana Insurance. According to the policy, the exclusions to each "insured" should be read separately. In Section II(A)(1) of the Business Auto Coverage Form, "insured" is defined to include the named insured and "anyone else while using with your permission a covered 'auto' you own, hire or borrow." The exclusions for "employees" and "fellow employees" would not apply to either Garcia or O'Banion as against Akers because neither of them were "employees." Nor does the workers' compensation exclusion apply against Akers because he is not the employer and has no obligation under the Act.

I would reverse the decision of the Court of Appeals and reinstate the summary judgment granted by the circuit court.

LAMBERT, C.J., joins this dissenting opinion.